NINLLIAT *v.* SURIÑACH ET AL.

APELACIÓN procedente de la Corte de Distrito de Mayagüez.

No. 691.—Resuelto en abril 2, 1912.

COSA JUZGADA—PLEITO EN EQUIDAD—DESESTIMACIÓN DE LA DEMANDA EN VIRTUD DE EXCEPCIONES PREVIAS.—Los principios que rigen la excepción de cosa juzgada han sido expuestos por este tribunal en los casos de *González* v. *Méndez,* 15 Dec. de P. R., 701 y *Calaf et al.* v. *Calaf,* resuelto en febrero 14, 1911; (17 Dec. de P. R., 223). En el caso de autos la parte demandada alegó contra la demanda la excepción de cosa juzgada por haber sido resuelto por la Corte Federal otro pleito esencialmente idéntico a éste. La resolución dictada por la Corte Federal declaró con lugar la excepción previa interpuesta contra la demanda, y se registró sentencia definitiva, por los méritos del caso, que generalmente es una desestimación de la demanda equivalente en equidad a una sentencia por los méritos del caso. Se resolvió que entre el caso de autos y el resuelto por la Corte Federal existe una semejanza esencial y que en ambos concurren los elementos de identidad necesarios para constituir la excepción de cosa juzgada.

Los hechos están expresados en la opinión.

Abogados del apelante: *Sres. José Sabater y J. S. Amill Negroni.*

Abogados de los apelados: *Sres. N. B. K. Pettingill y Fernando Vázquez.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

La cuestión principal planteada en este caso surge de una alegación de cosa juzgada.

En la Corte de Distrito de los Estados Unidos para Puerto Rico se formuló una excepción previa a una demanda o *bill* en equidad. La excepción previa fué sometida a la consideración de un juez especial quien informó acerca de la misma como sigue:

"De acuerdo con la orden de esta corte dictada en este caso el día 16 de mayo de 1910, yo, el que suscribe, Juez Especial de Cancillería, el miércoles 18 de mayo de 1910, oí las partes en este caso, el demandante representado por Don José Sabater y los demandados por Don Frederick L. Cornwell. El pleito es en equidad y el escrito de demanda es lo que comunmente se conoce como una demanda para purificar título. La demanda demuestra que el título legal está en los demandados. Los demandados presentaron su excepción previa a la demanda y los fundamentos substanciales de la misma, son: primero, por falta de equidad; segundo, que la demanda no procede por la razón de que el título legal está en los demandados; tercero, que los demandados son terceros de acuerdo con la Ley Hipotecaria y estatutos generales de Puerto Rico; cuarto, no se alega ningún hecho que demuestre ningún conocimiento por parte de los demandados en cuanto a las transacciones entre el demandante y Arán. Después del argumento de la excepción previa, ambos abogados del demandante y de los demandados presentaron un *memorandum* de autoridades, y después de la debida consideración del argumento y de las autoridades presentadas, yo el juez o árbitro, por el presente resuelvo, que según los hechos alegados en la demanda, el demandante no tiene derecho al remedio que solicita, pues el escrito de demanda claramente demuestra que el título legal de la propiedad en cuestión está en los demandados. (*Orton* v. *Smith,* 59 U. S. P., 263; *Frost* v. *Spitley,* 121 U. S. P., 552; *Dick* v. *Foraker,* 155 U. S. P., 413.) Resuelvo además, que bajo la ley hipotecaria de Puerto Rico, las decisiones de la Corte Suprema de Puerto Rico, de 30 de diciembre de 1899, 20 de diciembre de 1901, 15 de diciembre de 1902, y de 25 de diciembre de 1903, y las dos decisiones de la Corte Suprema de los Estados Unidos en *Todd* v. *Romeu,* los demandados son terceros de acuerdo con la ley, y que la acción no procede; por tanto, la excepción previa se sostiene y el escrito de demanda se desestima, con las costas al demandante. Mayagüez, Porto Rico, mayo 24 de 1910. (Firmado) B. J. Horton."

Este informe fué presentado el día 24 de mayo de 1910. En 25 de agosto, 1910, se dictó una sentencia definitiva en la que la corte declaró con lugar la moción que los apelados hicieron para que se eliminaran de los autos ciertas excepciones que el demandante había hecho al informe emitido por el juez especial, ordenando, decretando y resolviendo la corte en dicha sentencia, que se confirmara el informe del expresado juez especial por resultar del mismo que el escrito de demanda carece de equidad y debe ser desestimado.

Esta demanda fué presentada en la Corte de Distrito de Mayagüez el día 22 de agosto de 1910, formulándose contra ella entre otras defensas, la de *cosa juzgada.* El escrito de demanda que se presentó en la Corte Federal es como sigue:

"El demandante, Luis Ninlliat Ninlliat, ciudadano de la República Francesa, residente en Mayagüez, P. R., Estados Unidos de América, presenta esta demanda contra Camilo Suriñach, súbdito del Rey de España y residente en Mayagüez, P. R., y sus menores hijos, menores de 21 años de edad, nombrados, Carmen Rita, María Antonia, Ricardo y Camilo Suriñach, residentes también en Mayagüez, P. R., y viviendo bajo el cuidado y protección de su padre, el referido Camilo Suriñach.

"Y en su virtud, vuestro peticionario alega y dice:

"I. Que por un año más o menos antes del 2 de abril de 1898, vuestro peticionario tenía relaciones comerciales con la sociedad que funcionaba en esta ciudad de Mayagüez, P. R., bajo la razón social de J. Tornabells & Cía., y como resultado de dichas relaciones comerciales, dicha sociedad vendió a vuestro peticionario a título oneroso y de buena fe, el siguiente pedazo de terreno:

"Solar conteniendo 2,046 metros superficiales, sito en la prolongación de la calle de la Candelaria, en el lugar denominado Boulevard Balboa, de esta ciudad, colindante: por el norte con dicha calle; por el sur con la hacienda Carmelita; al este con propiedad de Doña Clara Cristy; y al oeste con propiedad de Don Alfredo Cristy.

"II. Que aunque dicho solar fué vendido a vuestro peticionario y al tiempo de la venta, vuestro peticionario tomó posesión del mismo, como si fuera dueño del mismo, no se hizo u otorgó documento o escritura de ninguna clase por dicha sociedad J. Tornabells & Cía. a favor de vuestro peticionario que demostrase que la venta tuvo lugar, y como vuestro peticionario creyó ser, y ha creído siempre y ahora

cree que es el dueño de hecho de dicho solar, edificó en el mismo con su peculio propio, dos casas de vivienda, percibiendo los alquileres y productos de dichas casas como dueño de las mismas y reconocido como tal por los inquilinos.

"III. Que después de estar en posesión como dueño de hecho del solar y no habiéndose otorgado escritura o documento de ninguna clase por la Sociedad J. Tornabells & Cía., para demostrar la venta a vuestro peticionario, vuestro peticionario solicitó de dicha sociedad al cabo de un año de estar en posesión, que le otorgara la correspondiente escritura y J. Tornabells & Cía, accediendo a ello, el día dos de abril de 1898 otorgó a favor de vuestro peticionario la escritura No. 99 otorgada ante el Notario Juan Z. Rodríguez de Mayagüez, P. R., por cuya escritura la venta del solar que se ha descrito anteriormente fué perfeccionada de acuerdo con la ley, e inscrita en el Registro de la Propiedad de Mayagüez, al folio 245, tomo 45, finca 659, inscripción 6ª.

"IV. Que la referida venta del solar descrito fué consumada por la suma de $4,500, moneda provincial y la escritura otorgada con ese fin por J. Tornabells & Cía. a favor de vuestro peticionario, fué inscrita en el registro de la propiedad de acuerdo con la Ley Hipotecaria Española y desde ese tiempo a saber, desde el 2 de abril de 1898, vuestro peticionario ha estado en todo tiempo y ahora está en posesión de dicho solar y es el dueño del mismo.

"V. Que vuestro peticionario por escritura No. 99, y el día 2 de abril de 1898, otorgada ante el notario de esta ciudad de Mayagüez, P. R., Juan Z. Rodríguez, traspasó en favor de Luis Arán Lancy, dicho solar, que se ha descrito en él párrafo primero de esta demanda, pero se insertó en dicha escritura una condición por la cual se estipuló, que si vuestro peticionario pagase a dicho Luis Arán Lancy y en el término de tres años a contar de la fecha el precio de la venta cotizada en dicha escritura, entonces dicha escritura no tendría efecto y el Luis Arán Lancy vendería de nuevo a vuestro peticionario dicho solar; pero si el término de tres años hubiera transcurrido sin que vuestro peticionario hubiere pagado el importe de la venta, entonces el solar quedaría de la propiedad de Arán, sin la obligación de venderlo de nuevo a vuestro peticionario. Pero también se convino que en caso de que el período de tres años se cumpliera sin que el peticionario pagase el montante de la venta, entonces el peticionario continuaría en posesión del solar referido, por un período de prórroga de dos años más, al fin de los cuales el peticionario estaría obligado a pagar a Arán la suma de seis mil pesos moneda provincial si deseaba redimir el solar y ser el único dueño del mismo. Esta escritura referida en

este párrafo, fué inscrita en el Registro de la Propiedad de Mayagüez, P. R., al folio 245 del tomo 45, finca 659, inscripción 7ª.

"VI. Que el período de tres años referido se cumplió y vuestro peticionario no pudo pagar a Arán Lancy el precio de la venta referido en el párrafo tercero de esta demanda, y Arán, de acuerdo con las prescripciones de la Ley Hipotecaria Española en vigor en Puerto Rico, hizo que se pusiera al márgen de la página 245 del tomo 45, finca 659, la consumación de la venta, al efecto de que la primera parte de la condición referida en la escritura No. 99, a que se hace referencia en el párrafo tercero de la demanda, no fué cumplida por parte del peticionario y por lo tanto que el solar descrito era de Arán y fué inscrito a su favor; pero de acuerdo con la segunda parte de la condición contenida en dicha escritura el peticionario continuó y quedó en posesión del solar por el término prorrogado de dos años más y por lo tanto quedó en posesión de dicho solar, aunque el mismo estaba inscrito a nombre de Arán.

"VII. Que antes de transcurrir el término prorrogado de los dos años, a saber, el día 5 de septiembre de 1902, Luis Arán Lancy otorgó la escritura No. 561 ante el Notario Público Mariano Riera Palmer, de Mayagüez, P. R., por la cual Arán traspasó y vendió a vuestro peticionario, por la suma de tres mil trescientos dollars, moneda americana, dicho solar, y el peticionario pagó al contado a Arán, la suma de $1,100 y por el saldo de $2,200 el peticionario constituyó a favor de Arán una hipoteca sobre dicho solar y como garantía adicional hipotecó también las dos casas de vivienda que había edificado vuestro peticionario con anterioridad, como se relaciona en el párrafo segundo de esta demanda, cuyo saldo o remanente de $2,200 debía ser satisfecho por el peticionario en la forma siguiente: $1,100 el 5 de septiembre de 1903 y $1,100 el 5 de septiembre de 1904. Esta escritura, el peticionario alega y dice no fué inscrita en el registro de la propiedad de esta ciudad.

"VIII. Que el día 29 de octubre de 1905, Luis Arán Lancy, el hipotecario arriba mencionado, falleció en esta ciudad de Mayagüez, P. R., y después de su muerte, a saber, el día 9 de marzo de 1909, la administradora judicial de los bienes de Arán, debidamente nombrada por decreto de la Corte de Distrito de Mayagüez, P. R., y por escritura No. 144, ante el Notario Público Mariano Riera Palmer, canceló y anuló dicha hipoteca constituída a favor de Arán sobre el solar y las casas de vivienda. Pero vuestro peticionario además, alega, que la referida escritura de hipoteca, por la suma de $2,200, ni tampoco la escritura de cancelación de la misma no fueron inscritas en el registro

de la propiedad, por cuya circunstancia el solar quedó en el registro de la propiedad como si fuera de la propiedad de Luis Arán Lancy, cuando de hecho el peticionario era y es el verdadero, justo y real dueño del mismo.

"IX. Y vuestro peticionario además, alega, que los demandados Carmen Rita, María Antonia, Ricardo y Camilo Suriñach, menores hijos del demandado Camilo Suriñach, ayudados y asistidos por su padre el referido Camilo Suriñach, instituyeron y siguieron un procedimiento o acción en Ley bajo el No. 202 ante esta honorable corte, contra los bienes de Luis Arán Lancy y obtuvieron sentencia en dicha acción por la suma de $3,000 e hicieron que se ejecutara dicha sentencia y por virtud de la misma, el márshal de esta honorable corte inquirió y obtuvo del registrador de la propiedad de esta ciudad, un informe por el cual se venía en conocimiento que el solar descrito anteriormente, estaba inscrito en dicho registro a nombre y favor de Luis Arán Lancy; y por consiguiente, el márshal embargó dicho solar perteneciente a vuestro peticionario y sobre el cual vuestro peticionario edificó dos casas de vivienda referidas en el párrafo segundo de esta demanda y el dicho márshal anunció el solar para la venta en un periódico que se publica en la ciudad de Mayagüez, P. R., y que tiene muy poca circulación. Pero en dicho anuncio de subasta ni tampoco en la devolución del mandamiento de ejecución aparece que no se hizo mención de las dos casas de vivienda que el peticionario edificó en dicho solar, como ha tenido más tarde el peticionario la oportunidad de constatar; y el márshal según información y creencia del peticionario, no estuvo en el lugar en que está sito el solar cuando hizo el embargo y anunció el solar para su venta en pública subasta, sólo por la circunstancia de que el mismo se encontraba inscrito en el Registro de la Propiedad de Mayagüez, P. R., a nombre de Luis Arán y Lancy y por esa razón creyó que el referido Arán era dueño de dicho solar.

"X. Vuestro peticionario además alega que dicho solar fué vendido por el márshal de esta corte, el día 13 de septiembre de 1909, al mejor postor, a saber, a un tal Fernando Vázquez, abogado que practica en el distrito de Mayagüez, P. R., y entonces el dicho Fernando Vázquez, como agente y comisionado por el demandado Camilo Suriñach, ofreció por el solar la mínima cantidad de $300, cuando él bien sabía que dicho solar valía nueve veces más que la cantidad mínima que ofreció.

"XI. Vuestro peticionario además alega que el demandado Camilo Suriñach, con anterioridad al tiempo en que el peticionario tenía rela-

ciones comerciales con la mercantil J. Tornabells & Cía. y con ante-
rioridad a la venta hecha por dicha mercantil del referido solar, a favor
del peticionario, era un empleado confidencial de dicha mercantil J.
Tornabells & Cía., a saber: era el cajero o tesorero de dicha mercantil,
y como tal tenía conocimiento de todos los negocios realizados entre la
mercantil dicha y el peticionario, y el referido Camilo Suriñach inter-
venía en los negocios de dicha mercantil y tenía interés en su progreso
y adelanto; y especialmente tenía conocimiento y creía que el solar
fué vendido al peticionario y ahora sabe y le consta que vuestro peti-
cionario es en conciencia el verdadero y justo dueño de dicho solar.

"XII. Vuestro peticionario además alega, que aunque al deman-
dado Camilo Suriñach le constaba que el solar de referencia no perte-
necía a los bienes del finado Luis Arán Lancy, apesar de eso, consintió
y ayudó *mala fide* al embargo y venta de dicho solar y por virtud de la
sentencia obtenida en la acción en ley seguida por él en representación
de sus menores hijos, ha estorbado maliciosa, voluntaria y fraudulen-
tamente, el derecho de propiedad que corresponde a vuestro peticio-
nario en dicho solar, con el solo fin de privar ilegal y fraudulenta-
mente al peticionario del dicho solar..

"XIII. Y vuestro peticionario además alega, que el demandado
Camilo Suriñach a fin de no aparecer como el perpetrador del fraude
que trata de cometer en contra de vuestro peticionario, comisionó a
un agente a saber, un tal Fernando Vázquez, como se ha dicho antes,
abogado, para que ofreciera por dicho solar en la subasta que se cele-
bró, y de este modo no aparecer el Camilo Suriñach como el verdadero
comprador y perpetrador de la usurpación que va dirigida contra los
derechos de propiedad de vuestro peticionario.

"XIV. Y vuestro peticionario además alega, que la referida su-
basta fué publicada en un periódico de muy escasa circulación en la
ciudad de Mayagüez, P. R., la *Bandera Americana,* y en dicho anuncio
no se hizo referencia a las casas de vivienda que vuestro peticionario
había edificado sobre el solar y por esta razón y también por tener
muy poca circulación el periódico de referencia, no solamente el peti-
cionario sinó tampoco la demandada en la referida acción en ley,
Francisca Arán como administradora de los bienes de Luis Arán
Lancy, tuvieron conocimiento o información alguna, de que dicho
solar se había de vender para satisfacer una sentencia; y el deman-
dado Camilo Suriñach valiéndose voluntaria, maliciosa y fraudulenta-
mente de estos medios y trabajando en la sombra, ha entorpecido y
tiene la intención de privar a vuestro peticionario de la propiedad de
dicho solar.

"XV. Y vuestro peticionario además alega, que aunque el márshal sólo embargó y vendió el solar referido, por la razón de que el solar sólo aparecía·como de la propiedad de Luis Arán Lancy; sin embargo, y apesar del conocimiento que dicho demandado ha tenido y tiene con relación a todos los hechos de esta demanda, el demandado Camilo Suriñach, se ha presentado personalmente en el sitio donde radica el solar de esta ciudad en los primeros días del mes de marzo pasado, y allí de mala fe y con el propósito de defraudar a vuestro peticionario, ha informado a los inquilinos de las dos casas edificadas en el solar y pertenecientes al peticionario, y a pesar de que sobre dichas dos casas no se hizo embargo ni venta alguna, por el márshal de esta corte, que él, Camilo Suriñach, el demandado, es el único y legal dueño de dicho solar y de las casas e intimó a los inquilinos que le reconocieran como tal dueño y que le pagaran a él las rentas y alquileres de dichas casas de vivienda, todo en perjuicio de los derechos de vuestro peticionario, de mala fe y con mala intención.

"A fin, por lo tanto, de que vuestro peticionario obtenga aquel remedio que sólo una corte de equidad puede conceder, y en consideración a que el peticionario no tiene derecho según la estricta y rigurosa regla de la ley común y de la Ley Hipotecaria Española, y sólo puede obtener remedio en una corte de equidad, donde asuntos de está índole son resueltos y atendidos, a fin, por lo tanto, de que los demandados, puedan si les es posible, demostrar por qué el peticionario no debe obtener lo que solicita, que hagan una aclaración completa de todos los hechos de acuerdo con su mejor información y creencia, completa, verdadera y directamente y que·hagan una perfecta contestación a los hechos alegados y relatados.

"Por tanto: vuestro peticionario, solicita que dicho embargo y venta hecho y ejecutado por el márshal de esta honorable corte, en dicha acción, en ley instituída por los demandados contra los bienes de Luis Arán Lancy y por virtud de lo cual, el solar de referencia fué vendido a Fernando Vázquez, el agente de los demandados, y que compró por y en favor de los menores hijos de Camilo Suriñach, sea eliminado,·cancelado y declarado nulo y sin valor ni efecto, y que se requiera a los demandados para que entreguen la escritura de venta otorgada por el márshal a su favor, a fin de que sea cancelada; y que dicho demandado y cada uno de ellos, sean perpetuamente restringidos y prohibidos de alegar o reclamar ningún título, derecho e interés sobre dicha propiedad descrita en el párrafo primero de esta demanda, y que se decrete que el demandante es el dueño de la misma y como tal con derecho a su posesión; y que se libre un mandamiento al Regis-

trador de la Propiedad de Mayagüez, P. R., ordenándole que cancele la inscripción hecha en favor y nombre de los demandados sobre dicho solar al folio 245, tomo 45, finca 659 de dicho registro.

"Y que vuestro peticionario tenga también cualquier otro remedio, según la naturaleza del caso, que la corte tenga a bien concederle de acuerdo con la equidad.

"Sírvase vuestro honor, ordenar que se expida un emplazamiento (*Subpoena ad respondendum*) contra Camilo Suriñach y sus menores hijos, ordenándole que en el día en que se fije, y bajo la pena correspondiente, comparezcan ante esta corte en el día fijado y que contesten a la demanda, sometiéndose a cumplir las órdenes o decretos que puedan dictarse según la equidad y buena conciencia. .

"Y vuestro peticionario, siempre solicitará como se ha dicho. (Firmado) Luis Ninlliat, demandante. EE. UU. de América. Distrito de Mayagüez, Puerto Rico, ss: En este día 4 de abril de 1910, ante mí personalmente compareció Luis Ninlliat Ninlliat, el demandante arriba mencionado, y siendo por mí debidamente juramentado, depone y dice: que él es el demandante en la arriba mencionada demanda; que ha leído dicha demanda, y conoce el contenido de la misma y que la misma es verdadera de su propio conocimiento, excepto en cuanto a los hechos relacionados por información y creencia y en cuanto a ellos los cree también ciertos. (Firmado) Luis Ninlliat. Jurado y suscrito ante mí, hoy, 4 de abril de 1910. John L. Gay, Secretario de la Corte de los Estados Unidos para Puerto Rico. Por Ricardo Nadal, Subsecretario. Testifico: que es copia fiel. John L. Gay, Secretario de la Corte de los Estados Unidos para Puerto Rico. (Firmado) Por Ricardo Nadal, Deputy."

La demanda presentada en la Corte de Distrito de Mayagüez es la siguiente:

"Isla de Puerto Rico. En la Corte de Distrito de Mayagüez. *Luis Ninlliat y Ninlliat,* Demandante, v. *Carmen Rita, Ricardo, Camilo y María Antonia Suriñach y Rivera,* menores de edad no emancipados, representados por su padre Camilo Suriñach y Arxer, Demandados. No. 2889, Civil. Nulidad y Cancelación. Demanda. Comparece el demandante, en el caso arriba mencionado, por representación de sus Abogados que suscriben, y por su causa de acción alega:

"1º. Que el demandante con fecha dos de abril de 1898, compró a la sociedad mercantil de esta plaza 'J. Tornabells y Compañía,' un solar, cuya descripción es la siguiente:

"Solar que mide 2,046 metros cuadrados, radicado en la prolonga-

ción de la calle de Candelaria, de esta ciudad, lugar denominado Boulevard Balboa, colindante: por el norte con dicha calle; por el sur con terrenos de la Hacienda Carmelita; por el este con solar de Doña Clara Cristy; y por el oeste con otro de Don Alfredo Cristy.

"Dicha venta consta de la escritura número 98, otorgada en esta ciudad, a 2 de abril de 1898, ante el Notario Juan Z. Rodríguez; cuya copia debidamente autorizada por dicho notario fué inscrita en el tomo 45 de esta ciudad, al folio 245, finca No. 659, duplicado, inscripción sexta y se acompaña con la presente demanda marcada 'Exhibit A.'

"Que el demandante vendió el solar arriba descrito a Luis Arán y Lancy por escritura No. 99, otorgada en esta ciudad, a 2 de abril de 1898, y ante el Notario Juan Z. Rodríguez, cuya escritura fué inscrita en el registro de la propiedad de esta ciudad, al folio 245 vuelto del tomo 45 de esta ciudad, finca 659 duplicado, inscripción séptima y se acompaña con la presente demanda para que se le considere como formando parte de la misma, marcada 'Exhibit B.'

"3º. Que dicha venta fué otorgada y convenida bajo la siguiente condición:

"Tercera. Esta venta se hace con la condición de que Ninlliat desde ayer, o sea desde el día primero de este mes, y a vencer todos los días últimos de cada mes y por el término de tres años, contados desde dicho día de este mes, usufructuará la finca, pagando a Arán por vía de alquiler la suma de sesenta pesos mensuales; y que si Ninlliat durante ese término de tres años devuelve a Arán los ameritados seis mil pesos, éste le volverá a vender toda la finca en el estado en que se encuentre a la hora que Ninlliat la readquiera; bien entendido que si pasa ese término, sin la devolución de los significados seis mil pesos, quedará Arán libre de la obligación de volver a vender la finca a Ninlliat; pero para este caso consiente el mismo Arán, en que luego de posesionado de la finca se la volverá a entregar por dos años más a Ninlliat para que siga utilizándose de sus productos, en la forma que mejor le convenga, siempre que la conserve en buen estado y le siga pagando los sesenta pesos mensuales de alquiler, conviniendo por último, en que durante estos otros dos años de prórroga, Arán volverá a vender la finca a Ninlliat si éste le devuelve los seis mil pesos que hoy se han ajustado como precio de toda la finca, puesta en estado de ser habitados sus establecimientos descritos.

"Cuya condición consta en la cláusula tercera de la escritura a que se refiere el párrafo anterior de esta demanda.

"4º. Que vencido el primer plazo de la condición a que se ha hecho

referencia, el comprador Luis Arán solicitó del registrador de la propiedad de esta ciudad, que pusiera y éste puso la nota marginal de consumación al asiento de inscripción del referido contrato de venta; pero alega ahora el demandante que dicho Luis Arán no consumó nunca la compraventa objeto del contrato inscrito, ni aparece de los libros del registro tal consumación del mismo, no obstante haber transcurrido la prórroga de dos años que condicionaba dicha venta.

"5°. Que de acuerdo con la cláusula segunda de la escritura No. 99 a que se hace referencia en el párrafo 2°. de esta demanda, el demandante fabricó en dicho solar, de su peculio particular los siguientes edificios:

"(a) Un edificio de mampostería de un solo cuerpo principal para dos casas de vivienda, midiendo el cuerpo principal veinte y dos metros de longitud por diez de cada costado y los dos martillos o alas que se extienden a sus lados, miden nueve metros de largo por seis de ancho cada uno;

"(b) Otro edificio de mampostería y madera que mide veinte y cinco metros de largo por siete de ancho.

"El justo valor de estos edificios en de seis mil quinientos dollars más o menos.

"6°. Que antes de vencer la prórroga o segundo plazo que para retraer tenía el demandante, éste compró en venta real y efectiva, el referido solar, según consta de la escritura No. 561 otorgada en esta ciudad a 5 de septiembre de 1902, ante el Notario Mariano Riera Palmer, de la que se acompaña una copia debidamente autorizada por dicho notario, la que se acompaña a esta demanda para que se la considere como formando parte de la misma, marcada 'Exhibit C.'

"Y alega el demandante, que por dicha escritura se constituyó hipoteca voluntaria a favor del vendedor Luis Arán sobre la finca vendida para responder a éste de dos mil doscientos dollars, parte del precio aplazado porque se realizó la enajenación. Esta escritura alega el demandante no fué inscrita en el registro de la propiedad de esta ciudad.

"7°. El demandante alega que desde el año antes de la fecha del otorgamiento de la escritura No. 98 de 2 de abril de 1898, a que se hace referencia en el párrafo 1°. de esta demanda, él ha sido el único propietario y ha estado desde aquella fecha hasta ahora, y aun continúa en la plena y pacífica posesión del solar y de los edificios descritos y relacionados en el párrafo 5°. de está demanda, ejerciendo todos los derechos dominicales como tal dueño y poseedor, sin que se le

haya privado nunca de tal posesión ni inquietado de la misma, y que dicha posesión ha sido pública y notoriamente tenida.

"8°. Que el demandante ha pagado totalmente la hipoteca que sobre la finca comprada tenía Luis Arán, habiéndole sido otorgada la correspondiente carta de pago y cancelación por su viuda Francisca Arán en su carácter de administradora de los bienes del finado Luis Arán y Lancy; cuyo acto fué ordenado por sentencia de esta honorable corte de fecha 11 de febrero de 1909. Se acompañan la escritura de cancelación de hipoteca otorgada bajo el No. 144, a 9 de marzo de 1909, ante el Notario Mariano Riera Palmer y copia certificada por el secretario de esta corte de dicha sentencia, para que formen parte de esta demanda y marcados ambos documentos 'Exhibits D y E,' respectivamente.

"9°. Que Camilo Suriñach, en nombre y representación de sus menores hijos, ahora los demandados, siguió cierto pleito en cobro de dinero contra Francisca Arán en su carácter de administradora de los bienes del finado Luis Arán, en la Corte de los Estados Unidos para Puerto Rico, y obtuvo sentencia a su favor por la suma de $2,037.89 y $38.80 de costas, en 19 de julio de 1909.

"10°. Que el márshal de la Corte de los Estados Unidos para Puerto Rico solicitó y obtuvo del Sr. Registrador Sustituto de la Propiedad de esta ciudad, para cumplimentar la referida sentencia, la anotación de embargo sobre el solar descrito en el párrafo 1°. de esta demanda, como si realmente dicho solar fuera de la propiedad del demandado en aquel procedimiento, Luis Arán; pero alega ahora este demandante, que la propiedad de dicho solar estaba y está sujeta al cumplimiento de la condición resolutoria que lo afectaba, y que Luis Arán, ni sus herederos y representantes legales solicitaron nunca que se consumara la venta del solar, la que estaba pendiente, como se ha dicho antes, de la prórroga o segundo plazo de dos años contenida en la cláusula tercera de la escritura No. 99 otorgada en esta ciudad, a 2 de abril de 1898, ante el Notario Juan Z. Rodríguez a que se hace referencia en el párrafo 2°. de esta demanda.

"11°. Que bajo la equivocada creencia de que el referido solar era de la propiedad de Luis Arán, el Márshal de la Corte de Los Estados Unidos para Puerto Rico vendió en pública subasta en el edificio denominado 'Cuartel Militar' sito en la calle de McKinley de esta ciudad, todo el derecho, título e interés que Luis Arán tuviera o pudiera tener en el referido solar; y en el acto de dicha subasta o sea el día 13 de septiembre de 1909, se presentó como único postor y licitador el Abogado Fernando Vázquez en su carácter de apoderado y represen-

tante legal de los demandados ahora, y ofreció por dicho solar la suma de trescientos dollars ($300), cantidad porque les fué adjudicado dicho solar, habiéndoles el referido márshal otorgado el correspondiente certificado de venta.

"12º. Alega el demandante, que la anotación del embargo hecho sobre el solar antes descrito, al margen de la inscripción séptima, del folio 245 vuelto, tomo 45 de esta ciudad, finca 659 del registro de la propiedad de esta ciudad, es nula y sin ningún valor ni efecto legal por haber sido hecha *pendente conditione* y cuando aun no se había pedido por Luis Arán o sus herederos y representantes legales que se extendiera por el registrador de la propiedad la nota de consumación definitiva de la venta que produjo la inscripción séptima referida.

"13º. Alega el demandante que el remate y venta de dicho solar se hizo por un precio extraordinariamente bajo que no guarda proporción equitativa con el valor del solar vendido, cuyo justo precio es alrededor de $2,700 o sea nueve veces más de lo que se obtuvo en la subasta.

"14º. Alega ahora el demandante, que el representante legal de los demandados, o sea el padre de éstos, Camilo Suriñach fué empleado y socio de la casa J. Tornabells & Cía., de quien primeramente adquirió el demandante el referido solar; y alega además, que dicho Camilo Suriñach fué liquidador de dicha casa comercial y también empleado de la casa de comercio titulada 'L. Arán,' en las fechas en que el demandante otorgó las escrituras números 98 y 99 a que se hacen referencia en los párrafos 1º. y 2º. de esta demanda. Y alega ahora el demandante, que según su mejor información y creencia, Camilo Suriñach sabía y le constaba de propio conocimiento las transacciones, negocios y operaciones habidas entre el demandante y Luis Arán con referencia a la venta del referido solar.

"15º. Alega además el demandante, que según su mejor información y creencia, Camilo Suriñach, sabía de propio conocimiento que dicho solar, aunque inscrito en el registro de la propiedad bajo una condición resolutoria, era y es de la exclusiva propiedad del demandante y que éste se encontraba y se encuentra desde hace más de trece años, poseyendo dicho solar; y alega el demandante además, que según su mejor información y creencia el dicho Camilo Suriñach maliciosa y fraudulentamente y con el próposito de perjudicar los intereses del demandante, señaló en su carácter de representante legal de los demandados, como bienes de la propiedad de Luis Arán, el referido solar, constándole que el mismo pertenecía y pertenece legal y justamente al demandante.

"16°. Alega además el demandante, que según su mejor información y creencia el apoderado y representante legal de los demandantes en la subasta referida ante la Corte Federal, ahora los demandados, el Abogado Fernando Vázquez, sabía y le constaba de ciencia propia que el solar y edificios en él construídos, eran y son de la propiedad absoluta del demandante.

"17°. Que del anuncio de la subasta del solar que se verificó por el Márshal de la Corte Federal, no pudieron tener ni en efecto tuvieron noticia el demandante ni Francisca Arán, administradora de los bienes del finado Luis Arán, demandada en aquel procedimiento ante la Corte Federal, a causa en primer lugar de no haberse incluído en dicho anuncio de subasta los edificios en él contenidos y fabricados a expensas del demandante, que por sus dimensiones y el valor que tienen y por el largo tiempo que tienen de fabricados, son muchísimo más importantes que el solar y porque la descripción de dicho solar es también muy semejante a otros que se encuentran en el mismo sitio o local de esta ciudad; y en segundo lugar no tuvo noticia alguna de dicha subasta el demandante, a causa de haber sido publicado dicho anuncio en un periódico de tan escasa circulación como es el periódico local *La Bandera Americana,* no pudiendo por tal motivo oponerse el demandante oportunamente a la subasta utilizando los remedios que la ley le concede.

"18°. Que desde la venta realizada por el Márshal de la Corte Federal hasta la fecha no ha transcurrido el período de un año.

"19°. Alega el demandante que la anotación de embargo letra 'A' y la inscripción de la venta en pública subasta, hechas la anotación al márgen de la inscripción 7ª. del folio 245 vuelto, tomo 45, finca 659, de Mayagüez, inscripción octava, impide a este demandante inscribir a su favor la escritura No. 561, otorgada en esta ciudad, a 5 de septiembre de 1902, ante el Notario Mariano Riera Palmer a que se ha hecho referencia en el párrafo 6°. de esta demanda.

"En virtud de las anteriores alegaciones, el demandante pide a esta honorable corte dicte sentencia a su favor declarando:

"1°. Que el solar descrito en el párrafo 1°. de esta demanda, es de la exclusiva propiedad del demandante;

"2°. Que los edificios descritos y relacionados en el párrafo 5°. de esta demanda, son de la exclusiva propiedad del demandante;

"3°. Que el embargo trabado por el Márshal de la Corte de Distrito de los Estados Unidos para Puerto Rico, con fecha 7 de agosto de 1909, es nulo y carece de valor y eficacia legal; y por tanto que procede la cancelación total de la anotación de embargo, letra 'A,' hecha

al márgen de la inscripción séptima, al folio 245 vuelto del tomo 45, de Mayagüez, finca No. 659, en el Registro de la Propiedad de Mayagüez;

"4°. Que la venta hecha en pública subasta de la propiedad o solar embargado por dicho márshal es nula y no tiene valor ni efecto legal ninguno; y por tanto procede la cancelación de la inscripción 8ª. verificada al folio 246 del tomo 45 de Mayagüez, finca No. 659, en el registro de la propiedad de esta ciudad; y

"5°. Que se ordene al efecto al secretario de esta corte expida los correspondientes mandamientos por duplicado al registrador de la propiedad de esta ciudad, a fin de que este proceda a verificar las cancelaciones referidas para que pueda este demandante inscribir a su favor la escritura No. 561 otorgada en esta ciudad, ante el notario de la misma Mariano Riera Palmer, de fecha 5 de septiembre de 1902;

"6°: Que el demandante recobre del demandado todas las costas y gastos que ha originado esta reclamación, incluyendo una cantidad razonable en concepto de honorarios del abogado del demandante;

"Y además suplica el demandante a esta honorable corte se sirva dictar una orden de *injunction* preliminar dirigida a Camilo Suriñach, sus agentes, empleados apoderados y abogados o cualquiera otra persona bajo su intervención, para que en representación de sus menores hijos, los demandados ahora, se abstengan en forma o manera alguna de proseguir o instar la acción o procedimiento entablado por *Camilo Suriñach* v. *Pedro Muñiz et al.* sobre desahucio, radicado en la secretaría de esta misma corte bajo el No. 2867, por cuya acción o procedimiento tratan los demandantes en él, ahora los demandados, de lanzar de la propiedad o solar descrito en el hecho primero de esta demanda a Pedro Muñiz, Ramón Aldecón, Etanislao Méndez, María Alers y José Villabol, alegando que se encuentran en dicho solar en precario y sin pagar merced alguna, mientras se resuelve el pleito principal entablado por el demandante por esta acción presentada ante esta corte; y suplica además el demandante a esta honorable corte se sirva dictar inmediatamente una orden de entredicho contra el referido demandado Camilo Suriñach en su carácter de representante legal de los demandados y contra sus agentes, sirvientes, empleados o abogados o cualquiera otra persona que obren bajo su intervención, prohibiéndoles de seguir adelante dicho procedimiento entablado por el pleito referido No. 2867, suspendiéndose la vista señalada para mañana en dicho asunto y además que se prohiba a dicho Camilo Suriñach en la representación que ostenta, enajenar, traspasar, hipotecar o gravar en alguna forma el solar a que se hace referencia en esta demanda, seña-

lando un día y hora para que comparezcan a exponer sus causas, si algunas tuvieren porque no ha de concederse dicha orden de *injunction* preliminar y que luego de celebrada la vista de dicho *injunction* preliminar, se haga perpetuo, todo mediante la prestación de la correspondiente fianza que el demandante está dispuesto a prestar por la cantidad que la honorable corte señale.

"Y, por último, suplica este demandante a esta honorable corte que conceda al demandante cualquier otro remedio que esté en consonancia, con la conciencia, justicia y equidad del caso. (Firmado) F. H. Dexter, y José Sabater, abogados del demandante."

Podrá verse, por tanto, que los hechos expresados en ambas demandas son sustancialmente idénticos.

El demandante tenía el verdadero título de la propiedad en cuestión pero dejó de inscribirlo. Los acreedores del dueño según el registro, embargaron la propiedad, obteniendo la escritura de la misma como resultado de los procedimientos seguidos ante la Corte Federal. Las súplicas de las mismas se diferencian, algo, pero son idénticas en sus puntos esenciales, a saber; que tanto el embargo como la escritura del marshal deben anularse, reconociéndose el título al demandante, y que cualquier inscripción hecha en el registro de la propiedad contraria a dicho título sea cancelada, ordenándose a los demandados que se abstengan de ejecutar ningún acto de dominio sobre la propiedad. En la demanda presentada en la Corte de Distrito de Mayagüez, también se pidió que se declarase que los edificios construídos en el terreno pertenecen al demandante, no siendo esta una diferencia esencial, pues lo accesorio sigue a lo principal, y los edificios se describieron en su totalidad en la demanda que se presentó en la Corte Federal donde se hizo la alegación especial de haber procedido el márshal de mala fe al anunciar la venta, puesto que no incluyó esos edificios en el anuncio.

En la opinión emitida por el juez especial se declara que la demanda carece de equidad. La demandante excepcionó este informe en la Corte Federal, fundándose en que el juez especial ha dejado de considerar, primero, el hecho

de que aunque el demandante alegó que los apelados en aquella acción tenían un título legal a la propiedad en cuestión, también expuso que el demandante había estado en posesión de dicha finca por un período mayor de diez años, poseyendo entonces la misma y siendo su verdadero dueño en equidad, teniendo los apelados un título legal simplemente; segundo, que si bien los apelados en aquella acción eran terceros según la ley hipotecaria de Puerto Rico, el demandante alegó que éstos obraron fraudulentamente y de mala fe, no teniendo por tanto derecho a los privilegios concedidos a los terceros compradores de buena fe con arreglo a la referida ley hipotecaria de Puerto Rico; tercero, que el demandante sostuvo que el título legal de los apelados en este pleito estaba viciado de fraude y mala fe; cuarto, que de la demanda resultó que la cuestión principal envuelta en esta acción era una de hecho, o sea, si los apelados procedieron o no fraudulentamente y de mala fe, no pudiendo, por tanto, suscitarse ninguna cuestión legal en la forma en que estaba redactada la demanda. En estas excepciones aparece de una manera más clara la consideración que hace el demandante de este pleito, así como la posición asumida por el juez especial. Esta fué en esencia una acción establecida para anular el título y las escrituras de los apelados así como para que se cancelaran en el registro de la propiedad todas las reclamaciones opuestas que existieran a favor de los apelados y en contra del apelante. Ese es también el objeto de este pleito.

Se ha dado gran importancia al hecho de hacerse mención en la opinión del juez especial, del título legal del apelado Suriñach. Insiste el apelante en que la acción establecida en la Corte Federal fué una en equidad y en ella se recurría a las facultades especiales que tiene la Corte Federal en equidad.

Los apelados por otra parte, alegan que la presente acción es de equidad por su naturaleza y no pertenece a la clase de acciones en ley que según el procedimiento y jurisdicción de equidad se distingue de una acción en equidad. Si la ac-

ción seguida en la Corte de Distrito de Mayagüez se hubiera
establecido en cualquier estado en donde se observa la ley
común y existe una diferencia entre la ley y la equidad, se
consideraría como una acción en equidad más bien que en
ley.  Las acciones en ley generalmente se establecen en re-
clamación de una indemnización o de una propiedad deter-
minada cuando el demandante se encuentra privado de su
posesión, las que pueden celebrarse ante un jurado.  Cree-
mos que una acción de nulidad como la presente pertenece
exclusivamente a la jurisdicción de una corte de equidad.
Este argumento tendría fundamento si la Corte Federal tu-
viera alguna jurisdicción especial de equidad en cuestiones
que se funden en las diversas ciudadanías.  Si no tiene esa
jurisdicción especial en tales casos, entonces cualquier es-
crito o demanda que se presente en esa corte en que la juris-
dicción surja de las distintas nacionalidades de las partes,
cualquiera que fuere el nombre que se dé a tal pliego no
puede tener otro objeto que el de solicitar para el deman-
dante un remedio igual al que le concede el Código Cívil u
otras leyes que otorgan la misma protección a todos aquellos
que tienen intereses o derechos en Puerto Rico.  No creemos
necesario resolver de modo específico la naturaleza de la de-
manda, examinada desde cualquier punto de vista técnico.
Queda en pie el hecho, de que en ambas demandas el deman-
dante trató de anular ciertas supuestas transacciones frau-
dulentas y su cancelación en el registro de la propiedad que
oscurecían su alegado título de la finca en cuestión.  La ex-
cepción formulada al informe del juez especial demuestra
esta conclusión.  Por errónea que haya sido la opinión del
juez especial, lo que en ella esencialmente se resolvió fué que
el demandante no tenía derecho a obtener la nulidad ni la can-
celación que solicita, fundandose esta negativa en los mismos
hechos y en iguales súplicas que las que se hicieron en el
presente caso.

La orden que se dictó en la Corte Federal fué sobre la
excepción previa, pero era definitiva como hemos visto, por-

que se fundaba en los méritos de dicha excepción. La desestimación de una demanda, es una resolución final según la jurisprudencia de equidad.

Daniell's Chancery Pleading & Practice; 6th American Edition, 994 y nota; 16 Cyc., 471.

Los principios que regulan la defensa de *cosa juzgada* han sido discutidos por esta corte en dos casos: *González v. Méndez*, 15 P. R. R., 682; 15 D. P. R., 701; *Calaf et al. v. Calaf*, resuelto en febrero 14, 1911; 17 D. P. R., 223.

En el presente caso los hechos fueron idénticos; el remedio solicitado es prácticamente el mismo, y los casos iguales en sustancia. La acción era enteramente igual a la seguida en la Corte Federal, cualquiera que sea el nombre que se le haya dado. La resolución de la Corte Federal se fundó en los méritos, y debe confirmarse la sentencia. Existen conjuntamente todos los elementos necesarios para establecer un caso en que se alegue la defensa de *cosa juzgada*.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados MacLeary, del Toro y Aldrey.