EX PARTE AXTMAYER, PETICIONARIO, *v.* EL PUEBLO, OPOSITOR.

APELACIÓN contra resolución de uno de los jueces de este tribunal dictada en un caso de *Habeas Corpus.*

No. 515.—Resuelto en abril 22, 1913.

DIVORCIO—CUIDADO PROVISIONAL DE LOS HIJOS—JURISDICCIÓN DE LA CORTE SEN- TENCIADORA.—De acuerdo con el artículo 166 del Código Civil Revisado, la corte que conoce de un pleito de divorcio, conserva su jurisdicción, después de apelada la sentencia de divorcio, para oir y resolver una moción sobre el cuidado provisional de los hijos.

ID.—PLEITO PENDIENTE.—Las palabras "mientras el juicio se sustancie y de- cida," empleadas en el artículo 166 del Código Civil Revisado, significan: hasta que se dicte resolución final en apelación, o hasta que haya expirado el término para interponer dicho recurso, de acuerdo con lo establecido en el artículo 348 del Código de Enjuiciamiento Civil.

ID.—ORDEN SOBRE CUIDADO PROVISIONAL DE LOS HIJOS—DESACATO—JURISDICCIÓN DE LAS CORTES DE DISTRITO.—El artículo 170 del Código Civil Revisado no ha sido derogado por el artículo 295 del Código de Enjuiciamiento Civil, y una orden sobre cuidado provisional de los hijos dictada por una corte de distrito después de pronunciada su sentencia en un pleito de divorcio, es inapelable, reteniendo dicha corte su jurisdicción para hacerla ejecutar y para castigar por desacato su desobediencia.

Los hechos están expresados en la opinión.
Abogado del Pueblo: *Sr. Charles E. Foote, Fiscal.*
Abogado del peticionario: *Sr. E. B. Wilcox.*

EL JUEZ ASOCIADO SR. DEL TORO, emitió la opinión del tri- bunal.

El presente es un recurso de apelación interpuesto contra la resolución de uno de los jueces asociados de esta Corte Su- prema dictada en un caso de *habeas corpus.* Henry Axt- mayer, el peticionario, presentó su solicitud el 8 de noviembre de 1912. Expedido el auto, se celebró la vista el día 9 y el día 11 del propio mes se dictó la resolución apelada decretando la inmediata excarcelación del peticionario. El peticionario fué puesto acto seguido y continúa aun en libertad.

Forma parte de los autos una exposición del caso apro- bada y certificada de acuerdo con la ley. Los hechos, según resultan de dicha exposición, son como siguen:

Henry Axtmayer entabló en la Corte de Distrito de San Juan, Sección 1ª., demanda de divorcio contra su esposa Dolores Ortiz. Esta no sólo contestó la demanda, sino que formuló una contrademanda solicitando a su vez el divorcio, alegando como causa el trato cruel y las injurias graves.

El 17 de junio de 1912 la demandada solicitó el cuidado provisional de su hijo Herman que se encontraba bajo la custodia de su padre. La corte en la misma fecha estimó que como la vista del pleito estaba señalada para muy en breve, las cosas podían quedar como estaban y ordenó que dos de los hijos del matrimonio continuaran bajo la custodia de la madre, y el otro, Herman continuara también bajo la del padre. De hecho, la corte entonces se limitó a no resolver la cuestión que se le presentara.

El 19 de septiembre de 1912 se celebró la vista del caso y el 25 del propio mes se dictó sentencia declarando sin lugar la demanda y con lugar la contrademanda y en su virtud roto y disuelto el vínculo matrimonial entre el demandante y la demandada. El 30 de septiembre último, el demandante apeló de dicha sentencia para ante este Tribunal Supremo.

El 12 de octubre de 1912 la demandada y contrademandante volvió a solicitar de la corte que pusiera provisionalmente bajo su custodia, mientras el pleito se decidía por sentencia firme, a su hijo Herman. El demandante se opuso alegando: 1°., que la corte no tenía jurisdicción para resolver lo que se le pedía por haber sido apelada su sentencia; 2°. que si esto no era así, entonces debía entenderse que la corte había resuelto la cuestión el 17 de junio, y 3°., que si la corte creía que podía reconsiderar su anterior resolución. entonces el demandante alegaba que existían causas poderosas por las que el niño Herman no debía estar bajo el cuidado de la demandada, por vivir ella rodeada por circunstancias de un carácter que afectarían el bienestar moral del dicho niño.

Celebrada la vista de la solicitud, el demandante no sostuvo el tercero de sus motivos de oposición, pero sí los dos

primeros.    La corte, el 4 de noviembre de 1912, decidió la
cuestión suscitada de la siguiente manera:

"La corte resolviendo la moción de la demandada, solicitando en
este caso el cuidado provisional de los hijos habidos del matrimonio
según la sentencia registrada, y la contra-moción del demandante sobre
el mismo asunto; y teniendo en cuenta la jurisprudencia establecida
en los casos reportados en 143 Cal., 313, 60 Cal., 624, y lo dispuesto
en el artículo 170 del Código Civil, que demuestran que la materia
objeto de tales mociones no está afectada por la apelación contra la
sentencia, y que puede ser reconsiderada la orden anterior dictada
sobre el asunto por el Hon. Juez Rossy, declaró con lugar dicha moción
de la demandada, y sin lugar la contra-moción indicada ordenando
en su consecuencia que los aludidos niños sean puestos bajo el cuidado
provisional de la madre."

Contra la transcrita resolución de la corte, se interpuso
por el demandante, el 6 de noviembre de 1912, recurso de ape-
lación para ante este Tribunal Supremo.

El 7 de noviembre de 1912 la demandada solicitó que se
cumpliera la orden de 4 de noviembre y la corte así lo acordó.
El márshal de la corte se constituyó en la casa del deman-
dante y lo requirió para que entregara el niño.    El deman-
dante se negó a entregarlo.    El juez entonces mandó citar al
demandante para que compareciera el día 8 de noviembre a
exponer las razones por las cuales no debía castigársele por
desacato.

En el día señalado compareció en efecto el demandante en
persona y por un abogado y no alegó razón alguna fundamen-
tal que explicara su negativa a cumplir con la orden de la
corte mandándole que entregara su hijo.    La corte lo condenó
a sufrir treinta días de cárcel y a pagar una multa de dos-
cientos dólares.    Para el cumplimiento de dicha sentencia la
corte expedió y firmó un mandamiento que contiene todos los
requisitos exigidos por la ley.

Preso el demandante, solicitó entonces el auto de *habeas
corpus* de que se ha hecho mérito y que fué resuelto en el sen-
tido que hemos indicado.

Habiendo en consideración todo lo expuesto, se concluye

que la única cuestión envuelta en este caso es la de la jurisdic-
ción de la corte de distrito para dictar y hacer ejecutar su
orden de 4 de noviembre de 1912. Si la corte tenía juris-
ción para dictar y hacer ejecutar dicha orden, la tenía también
para castigar por desacato al demandante que la desobedeció
de modo manifiesto y ostensible, y en ese caso la resolución
apelada debe revocarse. Si la corte de distrito no tenía tal
jurisdicción, tampoco tenía el poder de castigar por desacato
al demandante, y en ese caso la resolución apelada debe
confirmarse.

"Si lo ordenado por el auto de *mandamus* podía ordenarse
por la corte de circuito dentro de su jurisdicción, los proce-
dimientos por desacato no son revisables. Pero si lo orde-
nado estaba en todo o en parte fuera de los límites del poder
de la corte, el auto, o la parte del mismo dictada en exceso de
jurisdicción, era nula, y la corte no tenía derecho concedido
por la ley para castigar por desacato la desobediencia de
sus requerimientos. Tal es la regla bien establecida en esta
corte. *Ex parte* Lange, 18 Wall., 163; *Ex parte* Parks, 93
U. S., 18; *Ex parte* Siebold, 100 U. S., 371; *Ex parte* Vir-
ginia, 100 U. S., 339." (*Ex parte* Rowland, 104 U. S., 612.)

Estudiaremos y resolveremos en primer término si la corte
de distrito tuvo facultad para dictar la orden de 4 de noviem-
bre de 1912, después de haber pronunciado sentencia en el
pleito principal y de haberse interpuesto contra dicha sen-
tencia recurso de apelación; y, en segundo término, si la corte
de distrito tuvo facultad para ordenar la ejecución de la dicha
orden de 4 de noviembre, después de haberse interpuesto con-
tra la misma recurso de apelación.

El Código Civil vigente en Puerto Rico dedica el Título V
de su Libro I, al divorcio. Dicho título está dividido en cinco
capítulos. Uno de esos capítulos, el III, trata de las medidas
provisionales a que puede dar lugar el juicio de divorcio.
Entre esas medidas provisionales está la contenida en el ar-
tículo 166, que dice así:

"Si hubiesen hijos del matrimonio cuyo cuidado provisional pidieran ambos cónyuges, serán puestos bajo el cuidado de la mujer, mientras el juicio se sustancia y decida, a menos que concurran razones poderosas a juicio de la corte de distrito, para privar a la mujer del cuidado de sus hijos en todo o en parte."

De acuerdo, pues, con las prescripciones de la ley, el juez que conoce de un pleito de divorcio, mientras el juicio se sustancia y decida, tiene facultades para hacer cumplir lo dispuesto por la misma ley con respecto a la custodia provisional de los hijos.

La significación de las palabras "mientras el juicio se "sustancie y decida" del texto castellano, equivalentes a las del texto inglés *during the time the suit is pending,* ha sido fijada por el mismo legislador en la sección 348 del Código de Enjuiciamiento Civil, que dice así:

"Un pleito se considera pendiente desde que principia hasta su resolución final en apelación, o hasta que haya expirado el tiempo para interponer el recurso de apelación, a menos que se haya cumplido el fallo con anterioridad."

Examinada la ley reguladora del caso, la primera cuestión debe decidirse, pues, en la afirmativa. El pleito de divorcio se encontraba aún pendiente, y la corte pudo resolver como resolvió con respecto al cuidado provisional de los hijos de ambas partes, mientras el pleito se decidía en definitiva.

Veamos ahora si la corte pudo decretar como decretó la ejecución de su orden después de haberse interpuesto contra ella recurso de apelación.

El artículo 170 del Código Civil, que es el último del Capítulo III, del Título V, antes citado, dice así:

"Las resoluciones del tribunal de distrito con motivo de este capítulo serán inapelables y se enmendarán por el tribunal cuando lo exijan las circunstancias de cada caso."

Pero se sostiene que dicho artículo 170, que forma parte de un código que empezó a regir en 1902, fué derogado por el

295 del Código de Enjuiciamiento Civil puesto en vigor en 1904 y que, en lo pertinente, es como sigue:

"Podrá establecerse apelación   *   *   *.

"3.   *   *   *;  de una providencia especial dictada después de una sentencia definitiva;   *   *   *.''

¿Puede considerarse la orden de 4 de noviembre de 1912 como una providencia especial dictada después de pronunciada la sentencia definitiva en el pleito?

"No hemos podido encontrar en las autoridades una definición satisfactoria de la frase *'special order,'* contra la cual, según el estatuto, puede interponerse recurso de apelación. El Señor Bouvier expresa que una resolución especial es una orden de la corte en determinado caso y con un fin especial. Las resoluciones de California están en conflicto en cuanto a esta cuestión. En el caso de *Gillman* v. *Contra Costa Co.,* 8 Cal., 52, 57, 68 Am. Dec. 290, se dijo que el término se refería à los casos en que una corte o juez concede un remedio adecuado, y a los casos en que el remedio se niega. También se ha resuelto que la orden debe seguir a la sentencia en el mismo curso de los procedimientos. Este criterio ha sido sostenido en el caso de *Quivey* v. *Gambert,* 32 Cal., 304. Estos casos fueron examinados en el de *Calderwood* v. *Peyser,* 42 Cal., 110, y desestimados. El Juez Señor Wallace expresa que la orden 'es por sí' apelable. La sección 566 de la Ley de Práctica Civil dispone que todo mandamiento de una corte o juez dictado o hecho por escrito y que no está incluído en la sentencia, es una orden; de modo que una resolución denegando la suspensión de una ejecución es una 'orden especial,' y apelable. *Clark* v. *Gonu,* 2 Mont., 538, 539.'' 7 Words & Phrases Judicially Defined, 6585.

El significado de las palabras orden o providencia especial no ha sido fijado, pues, claramente por la jurisprudencia. En este caso concreto que resolvemos es dudoso si la orden de 4 de noviembre de 1912 puede calificarse o nó de providencia especial. Si decidimos la duda en sentido negativo, resulta evidente que la sección 295 del Código de Enjuiciamiento Civil,

en nada afecta lo dispuesto en el artículo 170 del Código Civil
revisado. Si la decidimos en sentido afirmativo, queda plan-
teada la cuestión más importante envuelta en el recurso: la de
si el artículo 170 del Código Civil revisado ha sido o nó dero-
gado por el 295 del Código de Enjuiciamiento Civil.

No se nos ha citado ni hemos podido nosotros encontrar
ninguna disposición legal que expresamente derogue dicho ar-
tículo. Sólo se ha presentado como ley derogatoria del mismo,
la sección 295 del Código de Enjuiciamiento civil a que nos
hemos venido refiriendo, y la cláusula final derogatoria conte-
nida en la sección 361 de dicho Código, que dice así: "Toda
ley, reales decretos, órdenes, órdenes militares, disposiciones
o partes de ellos incompatibles o en conflicto con este Código
quedan por la presente derogados."

"Una legislatura puede expresar su voluntad en cualquier
forma—afirmativa o negativa—tal como le plazca, mientras
no viole las limitaciones constitucionales. No está obligada a
usar palabras derogatorias expresas. Pero la derogación tá-
cita de las leyes no es favorecida por las cortes. La presun-
ción está siempre en contra de la intención de derogar, cuando
no se usan términos expresos. Para justificar la presunción
relativa a la intención de derogar un estatuto por otro, uno de
ellos debe ser incompatible con el otro, o la intención de dero-
gar debe ser claramente expresada de otro modo. De aquí se
sigue que cuando la intención de no derogar resulta aparente
o manifiesta de la ley, no hay base para la derogación tácita, o
para la aplicación de reglas con respecto a las derogaciones
tácitas." 36 Cyc., 1071 y 1072 y casos citados.

"Cuando dos leyes están en pugna, o en conflicto una con
la otra, siendo la aprobada últimamente la más reciente expre-
sión de la voluntad del legislador, debe prevalecer aunque no
contenga cláusula derogatoria alguna. Pero no es suficiente
para establecer tal derogación el que la ley subsiguiente cubra
algunos o aun todos los casos previstos por la ley anterior,
puesto que puede ser meramente afirmativa, o acumulativa, o
auxiliar. Entre las dos leyes debe existir una clara, inevita-

ble e irreconciliable pugna, y aun entonces la ley anterior se considera derogada tácitamente en tanto en cuanto está en pugna solamente. Si ambas leyes pueden, por medio de una interpretación razonable, interpretarse armónicamente, ambas deben subsistir. Dos leyes no están en pugna entre sí a menos que se refieran a la misma materia. Además, es necesario para que pueda deducirse que existe una derogación, que el objeto de las dos leyes sea el mismo. Si esto no es así, ambas pueden subsistir, aunque se refieran a la misma materia.'' 36 Cyc., 1073 a 1077, y casos citados.

Aplicando los anteriores principios al caso concreto que resolvemos, nos encontramos con que si bien la materia a que se refieren el artículo 170 de la ley civil sustantiva y la sección 295 de la ley civil adjetiva, es la misma, o sea, la apelación, el propósito de ambos preceptos evidentemente es distinto.

Cuando el legislador estableció la regla que contiene el artículo 170 del Código civil, tuvo en cuenta la naturaleza especial de las medidas provisionales a que pueden dar lugar los casos de divorcio. Dichas medidas pueden ser de tal manera urgentes, que hacerlas apelables directamente con el efecto de suspender su ejecución una vez interpuesto el recurso, sería destruir totalmente su eficacia.

Y siendo, como es, esto así, no puede pensarse que la intención del legislador fuera la de destruir su obra meditada y calculada previamente, con sólo consignar un precepto general relativo a las apelaciones en el Código de Enjuiciamiento Civil. A nuestro juicio, ambos preceptos pueden y deben subsistir en vigor en toda su integridad.

Como una prueba de la intención de la legislatura con respecto a su deseo de conservar vigentes los procedimientos especiales incluídos en el Código Civil, entre los cuales puede considerarse comprendido el relativo al divorcio, citaremos el artículo 85 de la ley sobre procedimientos legales especiales aprobada en 1905, un año después del Código de Enjuiciamiento, que dice así: ''Esta ley empezará a regir desde su aprobación, quedando derogadas todas las leyes anteriores

que la contradigan; pero seguirán vigentes los procedimientos especiales establecidos en el Código Civil, en la Ley Hipotecaria y su reglamento, y en cualquier otra ley, en cuanto no esté previsto por la presente.''

La contención del apelado con respecto a la derogación del artículo 170 del Código Civil por la sección 295 del Código de Enjuiciamiento, se basa principalmente en los casos de *Ex parte* Queirolo, 119 Cal., 635, y *Vosburg* v. *Vosburg,* 137 Cal., 493.

La sección 295 del Código de Enjuiciamiento Civil de Puerto Rico, es igual, en la parte que hemos venido citando, a la 939 del Código de Enjuiciamiento Civil de California, pero el artículo 170 del Código Civil puertorriqueño no tiene su equivalente exacto en el Código Civil californiano. De ahí que la jurisprudencia de California en este punto concreto, no sea aplicable como conclusiva en la resolución de la cuestión suscitada.

En el Código Civil de California también se trata como en el de Puerto Rico del divorcio en su totalidad y se dedican varias secciones a las medidas provisionales a que puede dar lugar, pero nada se prescribe expresamente sobre si una resolución provisional dictada en un caso de divorcio relativa a la custodia de los hijos, es o no apelable, y es natural que cuando luego se aprobó el Código de Enjuiciamiento Civil estableciendo una apelación general contra las providencias especiales dictadas después de sentencia definitiva, se considerara que existía apelación contra una providencia de tal naturaleza dictada en un pleito de divorcio, con referencia a la custodia de los hijos. No había en California ley alguna como en Puerto Rico que derogar. Sólo existía un vacío que llenar y que se entendió llenado por el precepto del Código de Enjuiciamiento Civil.

Tampoco es igual la ley de California a la de Puerto Rico en cuanto a las facultades que confiere a las cortes en relación con la custodia de los hijos en casos de divorcio. En California esa facultad se extiende hasta después de ser firme la

sentencia resolutoria del caso. En Puerto Rico se limita a la pendencia del pleito.

Habiendo en consideración todo lo expuesto, la segunda de las dos cuestiones que planteamos para el estudio metódico del caso, o sea, la de si la corte de distrito pudo a no ordenar la ejecución de su resolución de 4 de noviembre de 1912, debe también resolverse en la afirmativa.

Dicha resolución no era apelable de acuerdo con el precepto terminante del artículo 170 del Código Civil que está en todo su vigor, a nuestro juicio, y el recurso de apelación interpuesto contra ella no podía surtir efecto legal alguno, ni por tanto paralizar su ejecución.

Como dijimos al principio, no hay duda alguna con respecto al hecho de la desobediencia por parte del peticionario de la orden de 4 de noviembre de 1912, y habiendo llegado luego a la conclusión de qué la corte de distrito tenía jurisdicción para dictar dicha orden, y ahora a la de que la tenía también para hacerla ejecutar, se impone, como consecuencia inevitable, la revocación de la orden apelada dictada el día 11 de noviembre de 1912, resolviendo la solicitud de *habeas corpus* presentada en este caso. En tal virtud, no siendo ilegal la pena impuesta al peticionario, éste debe ser reducido de nuevo a prisión y continuar en ella hasta que cumpla la condena, o sea puesto antes en libertad por autoridad competente.

*Revocada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf y Aldrey.

El Juez Asociado Sr. MacLeary no tomó parte en la resolución de este caso.