CHARLES E. LAWTON, demandante y apelante, *v.* VICENTE RODRÍGUEZ RIVERA, demandado y apelado.

No. 4213.—*Visto:* Abril 26, 1927. *Resuelto:* Abril 23, 1928.

*F. Soto Gras,* abogado del apelante; *Henry G. Molina,* abogado del apelado.

El Juez Presidente Señor del Toro, emitió la opinión del tribunal

En 1924 Charles E. Lawton estableció una demanda de *injunction* contra Vicente Rodríguez, a fin de que se le prohibiera continuar cierta edificación comenzada en el solar número cuatro del "Carrion's Court," en Santurce, en contravención a las condiciones impuestas al venderse primitivamente todos los solares del dicho "Carrion's Court."

Contestó el demandado. Fué el pleito a juicio y la corte finalmente dictó sentencia que se registró el 4 de febrero de 1925 declarando con lugar la demanda y ordenando al Secretario que librara

"un auto de *injunction* dirigido al demandado para que se abstenga por sí o por otros a su nombre, de continuar la edificación comenzada . . . y ordenando a la vez destruir cualquier parte de la misma que ya estuviere construida o lo estuviere en la fecha en que el auto sea expedido, con imposición de las costas al demandado."

Apelada la sentencia, fué confirmada en todas sus partes por esta Corte Suprema el 21 de mayo de 1926.

Así las cosas, el 30 de enero de 1927 el demandante Lawton presentó a la corte de distrito una moción pidiendo que se librara una orden dirigida a Rafael Carrión a fin de que mostrara causa por qué no debía ser condenado por desacato y que se expidiera un auto mandatorio de *injunction* en ejecución de la sentencia registrada el 4 de febrero de 1925 y confirmada el 21 de mayo de 1926.

Los hechos en que se basa la moción, además de los expuestos, son, en resumen, los que siguen: que según se alegó

en la demanda, Rafael Carrión fué el autor del plan de urbanización del "Carrion's Court" y el que impuso al solar número cuatro la condición restrictiva que motivó el pleito, inserta en la primitiva venta de Carrión a G. H. Joy e inscrita en el Registro de la Propiedad; que Carrión no sólo tuvo conocimiento de la venta de Joy al demandado Rodríguez si que intervino directamente en la misma a fin de inducir a Rodríguez a comprar, expresando la opinión de que la cláusula restrictiva no lo obligaría; que aún cuando el litigio se llevó contra Rodríguez es lo cierto que Carrión tomó en él parte directa por medio de sus propios abogados, a quienes satisfizo sus honorarios, asistiendo personalmente al juicio y a la vista de la apelación como si fuera la parte realmente interesada; que con posterioridad a la sentencia y a su confirmación, Carrión compró a Rodríguez el solar con exacto conocimiento de la sentencia; que una vez comprado el solar, Carrión comenzó a hacer las obras preparatorias de una edificación notificando su abogado H. G. Molina el hecho al abogado de Lawton, F. Soto Gras, contestando éste protestando de que se actuara en contra de la sentencia y más tarde por carta oponiéndose a la edificación a nombre de Lawton invocando la sentencia; que por algún tiempo se abstuvo Carrión y luego intensa y festinadamente procedió a levantar los cimientos y paredes del edificio y sigue, proponiéndose terminarlo.

La corte libró la orden para mostrar causa que se le pedía y Carrión contestó, en resumen, así: que la corte no tenía jurisdicción para condenarlo por desacato ni para librar orden alguna de *injunction,* sin renunciar a la anterior defensa, que la moción no era suficiente por no estar debidamente jurada; que fué en verdad el autor del plan de urbanización en el que intervino desde el principio el demandante Lawton a virtud de cuya intervención fué que pudo adquirir el dinero suficiente para comprar los terrenos y llevar a cabo su plan; que antes de levantar el plano, Lawton escogió un

sitio para él por un precio menor que el que se fijara al resto de los solares; que admite que intervino en la venta de Joy a Rodríguez, pero niega que indujo al comprador a comprar limitándose su intervención, llamado por Joy en el momento de otorgarse la escritura, a expresar su opinión en el sentido de que el comprador tenía derecho a fabricar porque el solar tenía veinte metros de frente que era una de las condiciones establecidas por el querellado al tratar la venta de solares de la urbanización; que no tomó parte directa en la defensa del caso, ni nombró abogados, ni era la parte realmente interesada; que el 9 de febrero de 1925, a instancias del demandado Rodríguez, convino en darle $3,300 por el solar y pagar los gastos del litigio, habiendo pagado en efecto dicha suma a Rodríguez allá por el 9 de febrero de 1925, conviniendo además con Rodríguez en que si se revocaba la sentencia podría Rodríguez readquirir el solar por los mismos $3,300 más lo que el querellado hubiera pagado por gastos del litigio; que el querellado no pagó cantidad alguna a los abogados del demandado hasta algún tiempo después y no se otorgó la escritura de venta por Rodríguez al querellado hasta 30 de octubre de 1926; que asistió al juicio como mero espectador y cuando hizo a los abogados del demandado ciertas observaciones sobre lo incierto de la declaración de Lawton, le contestaron que esa declaración incierta no tenía importancia porque el querellado no era el demandado sino una tercera persona y ellos no querían entrar en esas cuestiones de hecho; que sometió todos los hechos y el récord del pleito al abogado H. G. Molina y éste, después de un detenido estudio, le aconsejó que la sentencia no tenía el efecto de *res judicata* y que el querellado podía comenzar a fabricar en el solar procurando construir a la mayor distancia posible de Lawton y en tal forma que Lawton no pudiera ejercitar ''el derecho que pudiera tener de volver a radicar el asunto con el querellado,'' esperando el regreso de Lawton que estaba ausente para comenzar; que Lawton

y su esposa regresaron el 25 de octubre de 1926 y el 2 de noviembre siguiente el querellado comenzó la construcción de la obra; que no habiendo sido notificado de procedimiento judicial o queja algunos, el querellado por su abogado Molina se dirigió al abogado Soto Gras para hacerle saber lo que estaba haciendo, con el fin de que Lawton tomara alguna acción si lo deseaba; que Soto Gras contestó por carta protestando de modo ambiguo de la continuación de la obra; que el querellado contestó a su vez explicando el detalle de su proyecto el 15 de noviembre de 1926, la opinión de su abogado, y concluyendo así:

"En vista de dicha opinión y de las circunstancias mencionadas, he procedido a fabricar en la forma indicada sin la más mínima intención ni deseo de desacatar cualquier fallo de los tribunales. Creyendo que me asiste la razón y la equidad voy a continuar la construcción del edificio hasta tanto sea ordenado por los tribunales a suspender la misma."

que dicha carta no fué contestada hasta diciembre 18, 1926, siéndolo entonces en la siguiente forma:

"Refiriéndome a su carta de noviembre 15, 1926, contestando a la mía de 11 del mismo mes y año, debo significarle que su contenido puede quizás ser considerado por el señor Lawton a quien deberá usted dirigirse expresando las circunstancias de su carta.

"Por mi parte nada puedo hacer e insisto en que su edificación en el solar luego de dictado el injunction definitivo, es una violación de la orden de la corte, y que el asunto está terminado definitivamente, constituyendo cosa juzgada la sentencia dictada por la corte al efecto."

que el 30 de noviembre de 1926 el querellado suspendió la obra, no debido a la carta de Soto Gras, sino a ciertas negociaciones de venta que exigían cambios en el plano, pero fracasadas dichas negociaciones, desde diciembre 13, 1926, reanudó el trabajo que llegó hasta el comienzo del segundo piso de la casa cuando recibió la orden de la corte, ascendiendo lo gastado a $4,050; que los actos realizados no son contrarios a la sentencia ni constituyen desacato.

Y alegó además el querellado, lo que sigue:

"11.—Que según ha sido informado y cree el querellado la sentencia del Hon. Tribunal Supremo en el presente caso confirmando la de esta Hon. Corte, fué dictada como consecuencia de la siguiente hipótesis en cuanto a los hechos, la cual aparece en la página 491 de la opinión de dicho Tribunal (Vol. 35 D.P.R.) a saber:

" 'Los actos preliminares de Rafael Carrión y Pacheco haciendo la agrupación de fincas que inscribe bajo un número independiente en el registro; que levanta un plano general del terreno del que aparece su división en solares con sus respectivas cabidas y numeradas del 1 al 12 dando frente a una calle que los divide seis a cada lado y que a su entrada coloca dos mesetas en las que inscribe el nombre de "Carrión's Court," es la demostración evidente y explícita de un plan general de mejoras, exclusivo y privado, para uso y disfrute de futuros compradores.'

"Esa conclusión en cuanto a los hechos se debe a la declaración ante esta corte del demandante Lawton, cuya declaración era incierta, porque como se dice arriba, el solar del demandante Lawton había sido escogido o determinado por él y convenido la compraventa del mismo con el querellado antes de levantarse el plano urbanización y lo único convenido entre el querellado y el demandante Lawton, y con los demás compradores de solares en 'Carrión's Court' fué que no se construiría ninguna casa en solar de menos de 20 metros de frente. Y fué precisamente por este motivo que el querellado estuvo conforme en comparecer en la escritura entre Joy y Rodríguez Rivera, sin tener el querellado el más mínimo interés en dicha venta, y sin que se le ofreciera o fuera a recibir el querellado compensación alguna por su intervención en dicha escritura.

"12.—Que en la fecha de otorgarse dicha escritura entre Joy y Rodríguez Rivera el querellado no era, ni ha sido hasta el presente, dueño de siquiera un metro cuadrado de 'Carrión's Court' (con excepción del solar en controversia que fué adquirido como consecuencia de este litigio) y la única intervención que ha tenido el querellado en todo este asunto, así como en las divisiones y ventas de otros solares, ha sido la de hacer constar y mantener el cumplimiento de la condición antes mencionada en cuanto al requisito de un mínimum de 20 metros como solar de cada edificación.

"13.—Que de los 12 solares que aparecían originalmente indicados en el plano, 4 de los mismos que tenían más de 20 metros de frente fueron modificados para dividirlos en 6 solares de 20 metros

de frente cada uno, y en 3 de dichos seis solares se habían edificado casas con anterioridad a la fecha de la venta por Joy a Rodríguez Rivera sin haber mediado protesta alguna del demandante Lawton ni de ninguno de los otros propietarios de o residentes en 'Carrión's Court,' cuyos hechos le constaban al demandante Lawton de propio conocimiento, y en su consecuencia el querellado no podía imaginarse que dicho Lawton, tendría, en cuanto al solar en controversia, las pretensiones que aparecen en la demanda originaria de este pleito. Que en una de dichas casas está representada en la fotografía marcada 'D' (que se acompaña a, y se hace formar parte de, esta mostración de causa) y dicha casa se encuentra directamente en frente de la casa del demandante y ahí se encontraba en y antes de la fecha de la venta por Joy a Rodríguez, y como antes se ha dicho en un solar de solamente 20 metros de frente que había sido segregado de uno de los solares de mayor cabida que aparecía en el plano original.

"Que entre la fachada Norte de la casa del demandante y la fachada sur de la casa que se está construyendo por el querellado, objeto de este procedimiento sobre desacato, media una distancia de aproximadamente 20 metros. Que el edificio en construcción por el querellado es para una residencia particular y reúne todos los requisitos establecidos para la construcción de las demás casas en 'Carrión's Court,' y lejos de perjudicar al demandante en lo más mínimo, lo beneficia en el valor de su propiedad, porque dicha casa con su jardín y demás pertenencias, tal como ha sido proyectada y será construida por el querellado, embellecerá el vecindario y será mucho más preferible que un solar abandonado y sin edificación alguna.

"Que aún cuando el demandante Lawton pudiera sufrir algún perjuicio como consecuencia de la obra del querellado (posibilidad que no podemos comprender) los perjuicios que serían ocasionados al querellado como consecuencia de la paralización de la obra serían mucho mayores que los que pudieran ser ocasionados al demandante, y en tal virtud esta Hon. Corte, como una corte de equidad, no debe conceder el remedio de injunction solicitado."

Se celebró la vista en la que ambas partes ofrecieron y practicaron prueba y la corte finalmente, el 1º. de febrero de 1927, declaró sin lugar la querella de Lawton. Parece conveniente transcribir de su opinión lo que sigue:

"La cuestión fundamental en este caso, según la entiende la corte, es la siguiente a saber:

"Si la sentencia dictada por esta corte de distrito en 30 de enero de 1925 y que fué confirmada por la Corte Suprema de Puerto Rico en 21 de mayo de 1926, es obligatoria en su alcance y efectos para el querellado Rafael Carrión Pacheco, quien no aparece como parte en dicho pleito No. 3033, sobre Injunction.

"La parte dispositiva de dicha sentencia, copiada literalmente, lee como sigue:

" 'Y la corte, tomando en consideración dichas alegaciones, pruebas y argumentaciones y por los fundamentos de su opinión que unirá al record, dicta sentencia declarando con lugar la demanda y en consecuencia se ordena al Secretario libre un auto de Injunction *dirigido al demandado* para que se abstenga *por sí o por otros a su nombre* de continuar la edificación comenzada en el solar número 4 que se describe en la demanda y ordenando a la vez destruir cualquier parte de la misma que ya estuviere construida o lo estuviere en la fecha en que el auto sea expedido con imposición de costas al demandado.'

"Como se ve el auto de Injunction decretado en la sentencia firme va dirigido al demandado (y a ninguna otra persona) y se le ordena que dicho demandado se abstenga *por sí o por otros a su nombre* de continuar la edificación comenzada en el solar número 4 que se describe en la demanda, etc.

"En varios de los casos de jurisprudencia citados por el querellante en apoyo de su contensión la sentencia de Injunction fué dictada contra el *demandado y cualesquiera* otras personas (and all other persons whom so ever) pero en el caso presente el Injunction fué dictado solamente contra el demandado Vicente Rodríguez Rivera, prohibiéndosele edificar en el solar No. 4 *por sí o por otros a su nombre.*

"No aparece de la querella ni de la prueba, que el querellado Rafael Carrión Pacheco esté fabricando en el solar Número 4 *a nombre de Vicente Rodríguez Rivera,* demandado en el pleito primitivo en que se dictó el Injunction.

"En este caso se han probado hechos y circunstancias que han convencido moralmente a la corte de que el querellado Rafael Carrión Pacheco ha tomado una participación muy activa aunque indirecta, en el pleito de Injunction en que se dictó la sentencia que fué confirmada por la Hon. Corte Suprema de Puerto Rico.

"Si esta corte se hubiera convencido de que podía prescindir en

cuanto al querellado Rafael Carrión Pacheco del debido procedimiento de ley, estaría dictando ahora sin vacilación alguna una resolución contra él de acuerdo con los términos de la querella presentada por el señor Charles E. Lawton; pero la corte no puede perder de vista que Rafael Carrión Pacheco legalmente no es alcanzado por los ·efectos de la sentencia de Injunction dictada en 30 de enero de 1925 y confirmada por la corte Suprema de Puerto Rico en 21 de mayo de 1926.''

No conforme Lawton interpuso el presente recurso en el que ambas partes han argumentado por escrito y oralmente las cuestiones envueltas. Su decisión depende a nuestro juicio de la contestación que se dé a la siguiente pregunta: ¿Alcanza a Carrión el efecto de la sentencia dictada contra Rodríguez?

██ Conocemos los hechos. No es necesario que nos refiramos a la prueba. En su contestación Carrión reconoce que compró el solar a Rodríguez el 9 de febrero de 1925, o sea sólo cinco días después de registrada la sentencia contra Rodríguez, aunque la venta no se formalizó por escritura pública hasta el 30 de octubre de 1926.

Siendo esto así, cuando la apelación de la sentencia para ante este Tribunal Supremo se interpuso o por lo menos mientras dicha apelación se estuvo tramitando y fué decidida, el verdadero dueño del solar, o sea la parte realmente interesada, no era Rodríguez, sino Carrión.

En el pleito de *injunction* quedó definitivamente resuelto que el demandado no podía construir la casa que intentó levantar y ello es cosa juzgada también para Carrión que conocía todos los antecedentes del litigio y sustituyó en sus derechos a Rodríguez pendiente aún el pleito en apelación. Si Carrión no hubiera permanecido callado después de la compra del 9 de febrero de 1925 y hubiera puesto ·tal hecho en conocimiento de la corte, hubiera podido legalmente aparecer como la parte demandada.

El no haber procedido de tal modo no puede favorecerle.

El art. 59 de la Ley de Evidencia dispone que el fallo o

decreto de un tribunal será concluyente en cuanto a la materia directamente juzgada entre las partes y sus sucesores en interés por título adquirido posteriormente al comienzo de la acción, o del procedimiento especial.

Cuando Carrión adquirió de Rodríguez aún estaba pendiente el litigio de acuerdo con el art. 348 del Código de Enjuiciamiento Civil que prescribe que "un pleito se considera pendiente desde que principia hasta su resolución final en apelación, o hasta que haya expirado el tiempo para interponer el recurso de apelación, a menos que se haya cumplido el fallo con anterioridad." Véase el caso de *Ex parte Axtmayer*, 19 D.P.R. 399. Y así Carrión adquirió la propiedad sujeta a las resultancias del litigio.

Es cierto que el *injunction* opera sobre la persona, pero en el caso de autos lo que se ventiló y resolvió fué si el dueño de la propiedad de que se trataba podía o no prescindir en el uso de la misma de ciertas restricciones que se impusieron al venderla, restricciones que se hicieron constar en la escritura de trasmisión y se inscribieron en el registro de la propiedad, y no si el demandado Rodríguez por alguna circunstancia personal no podía llevar a cabo la construcción. Carrión se convirtió en dueño en el momento y en la forma que conocemos y fué alcanzado por la sentencia, y en él sí que puede sostenerse que concurren circunstancias personales que hacen aún más necesaria la aplicación de la regla, pues no fué él el mero sucesor en título, sino el dueño original, el autor del plan de urbanización, el primitivo vendedor que impuso la condición que fué interpretada y cuyo alcance fué fijado en el pleito y el que intervino además en la segunda venta en la forma que también conocemos y siguió de cerca todos los trámites del litigio.

La anterior es la impresión general que del caso hemos formado después de un estudio cuidadoso del mismo. Sin embargo, parece justo discutir las defensas de la parte apelada para ver si destruyen o modifican esa impresión general.

Por la primera de dichas defensas se sostiene que el remedio que pudiera tener el apelante podría ser una demanda original de *injunction,* pero nunca el procedimiento sumario seguido, y por la segunda que ello es así porque la sentencia dictada contra Rodríguez "no es *res judicata* contra el querellado porque las defensas o cuestiones que él puede y desee litigar no fueron objeto del pleito anterior y el querellado no tomó parte en dicho pleito ni tenía un interés legal (aunque sí moral) en aquella controversia."

En su propio alegato la parte apelada indica que la segunda defensa envuelve la primera.

El procedimiento originalmente seguido por Lawton contra Rodríguez fué el de *injunction.* ¿Qué efecto tiene una sentencia dictada en un pleito de tal naturaleza?

Resumiendo la jurisprudencia sobre la materia dice *Corpus Juris:*

"Las reglas aplicables generalmente a la interpretación de decretos en equidad son aplicables en casos de decretos finales concediendo o negándose a conceder el remedio solicitado por *injunction.* Igualmente, los principios generales aplicables respecto a sentencias y decretos finales son también generalmente aplicables a casos de decretos finales concediendo o rehusando conceder un *injunction.* Un decreto concediendo un *injunction* permanente tiene el efecto de una adjudicación final que suspende los actos que se tratan de realizar." 32 C. J. 387.

Sentado esto, penetrando en el campo general de la jurisprudencia sobre los efectos de una sentencia, encontramos en *Black on Judgments* lo que sigue:

"Es una regla bien establecida que una sentencia es concluyente no sólo en lo que respecta a las verdaderas partes en el litigio, si que también en cuanto a todas aquellas personas que tienen algún nexo jurídico con tales partes. No solamente es ésta una doctrina de nuestro derecho, si que también es un principio de la jurisprudencia general, según aparece de la regla del derecho romano de que 'la alegación de *res judicata* puede utilizarse contra aquel que ha sucedido en los derechos de propiedad a la persona contra quien se dictó la sentencia.' Por tanto, es importante determinar qué constituye

nexo jurídico (*privity*), dentro del significado de las decisiones sobre: la materia. Nexo jurídico ha sido definido como 'una relación mutua o de sucesión en cuanto a los mismos derechos de propiedad.' Y los comentaristas del derecho romano clasifican los sucesores-(privies) como sucesores en derecho, por consanguinidad o por herencia, agregando a veces como una cuarta clase los sucesores por representación. Pero para los fines de una discusión sobre la doctrina de *res judicata*, esta clasificación no tiene importancia práctica alguna. Sólo tenemos que ver con los causantes, causahabientes o derecho habientes. Si una persona queda obligada por una sentencia, por ser derecho habiente de una de las partes, eso ocurre porque ha sido sucesora en algún derecho título o interés de tal parte en la cuestión en controversia en el litigio, y no porque haya nexo jurídico por razón de consanguinidad, de derecho o por representación entre ellas, aunque el nexo jurídico de esta última clase puede también existir. Y, con el fin de crear esta relación, deben existir dos requisitos. En primer lugar, la persona que así va a estar relacionada con la sentencia debe ser una que reclame un interés en la cuestión afectada por el litigio o que alegue ser sucesora en derecho de una de las partes. . . . En segundo lugar, los causahabientes (privies), en tanto en cuanto quedan obligados por la sentencia, son aquellos que adquirieron algún interés en la cuestión en controversia después de dictarse sentencia; si su título o interés surgió antes de ocurrir tal cosa, ellos no quedan obligados por la sentencia, a menos que fuesen incluidos como partes en el litigio." 2 Black on Judgments, pág. 830 *et seq.*

Prescindiendo por ahora de considerar si Carrión era o no una verdadera parte interesada en el litigio entre Lawton y Rodríguez, no puede negarse que fué el causahabiente de Rodríguez y que adquirió el solar en cuestión después de dictada la sentencia impidiendo a Rodríguez construir separándose de las reglas especificadas en su título. Existía, pues, entre Rodríguez y Carrión, el nexo jurídico que la jurisprudencia exige para que la sentencia dictada contra el primero obligara al segundo. Y así puede sostenerse que Carrión compró no sólo con las condiciones estipuladas si que también con esas condiciones interpretadas por la sentencia pronunciada en el pleito de *injunction*.

·· 'Pero se alega que si esto fuera así se cometería' la injusticia de impedir que Carrión pudiera aducir ciertas defensas que tenía y que no adujo Rodríguez.

Recurriendo otra vez a *Black on Judgments*, encontramos lo que sigue:

"Después de estas observaciones preliminares podemos exponer categóricamente las dos reglas principales que gobiernan la materia de impedimento debido a sentencia (*estoppel by judgment*), ya que las mismas pueden deducirse del resultado general de todas las autoridades. La primera de estas reglas principales es como sigue: Una cuestión que estuvo real y directamente en controversia en un pleito anterior y fué considerada judicialmente y resuelta por una corte doméstica de jurisdicción competente, no puede ser levantada en una acción futura entre las mismas partes o sus causahabientes (privies) ya sean las causas de acción en ambos pleitos idénticas o distintas. Según dice la Corte Suprema de los Estados Unidos: 'El principio general enunciado en numerosos casos es que un derecho, una cuestión o un hecho claramente puestos en controversia y resueltos directamente por una corte de jurisdicción competente, que han servido de base para el remedio solicitado, no pueden ser disputados en un pleito posterior entre las mismas partes o sus causahabientes; y aún si la causa de acción posterior es distinta, el derecho, la cuestión o el hecho, una vez resueltos entre las partes o sus causahabientes, deben ser considerados como que han sido establecidos concluyentemente, mientras la sentencia en el pleito anterior permanezca inalterada. La segunda de las reglas principales sobre la materia puede exponerse así: Una sentencia dictada por una corte de jurisdicción competente sobre los méritos del caso, es un impedimento para cualquier acción futura, entre las mismas partes o sus causahabientes, fundada en la misma causa de acción, mientras tal sentencia permanezca sin ser revocada. O, expresándola en otra forma: 'La doctrina de *res judicata* es clara e inteligible y equivale simplemente a esto: que una causa de acción, una vez determinada finalmente entre las partes, sobre los méritos del caso, por un tribunal competente, sin que contra la sentencia recaída se haya interpuesto recurso de apelación alguno, no puede ser objeto de litigio posteriormente mediante nuevos procedimientos, ya sean ante el mismo tribunal o ante cualquier otro." Black on Judgments, tomo 2, segunda edición, página 764 *et seq*.

Creemos que el lenguaje de la Corte Suprema de los Estados Unidos que cita el comentarista no puede ser más claro. Toda la cuestión estuvo envuelta en el litigio entre Lawton y Rodríguez. Todas las defensas pudieron y debieron ser alegadas. Carrión no estaba obligado a comprar a Rodríguez. Si compró, lo hizo sujeto al fallo dictado. Y si existe algún caso en el que un comprador futuro estuvo desde un principio enterado de todo y tuvo oportunidad para intervenir si es que en realidad de verdad no intervino, ese caso es éste.

Pero hay más. Ya hemos dicho que Carrión compró si bien después del fallo de la corte de distrito, antes del fallo confirmatorio de la Corte de Apelación, compra que, como demuestra la moción de Lawton que ha dado origen a estos procedimientos, no fué conocida por Lawton hasta después de dictada la sentencia en apelación, cuando se redujo a escritura pública. Y siendo ello así parece aplicable la siguiente doctrina:

"Es regla general que el adquirente de propiedad (a excepción de documentos negociables antes de su vencimiento) que compra alguna propiedad mientras está ventilándose un litigio relativo a ella, tiene un nexo jurídico con el vendedor, en forma tal que queda obligada por la sentencia que recaiga en el pleito, de igual modo que si se hubiese hecho parte en el mismo. Creemos que es una regla bien establecida que quien quiera que compra propiedad mientras está pendiente un litigio en el cual el título de la misma está envuelto, la adquiere sujeta a la sentencia o decreto que pueda dictarse en el pleito contra la persona de quien la compra." 2 Black on Judgments, 833.

El art. 348 de nuestro Código de Enjuiciamiento Civil que citamos anteriormente es igual al 1049 del de California, y la Corte Suprema de dicho estado en el caso de *Cook* v. *Ceas,* 143 Cal. 221, dijo:

"Esta sección no intenta prescribir una regla de evidencia, sino simplemente determinar la condición de un pleito después que se ha dictado en el mismo la sentencia y, consecuentemente, el efecto de la sentencia."

Si ello es así, si bajo cualquier aspecto que el caso se considere, la sentencia dictada contra Rodríguez obligaba por completo a Carrión, si Carrión se colocó en el lugar de Rodríguez, es una consecuencia lógica que el procedimiento que debe seguirse con Carrión al imputarle una violación de la sentencia es el mismo que debió haberse seguido con Rodríguez si hubiera cometido la misma violación. Creemos que la propia parte apelada no pondría en tela de juicio que una violación de la sentencia por parte de Rodríguez hubiera podido investigarse dentro del mismo procedimiento de *injunction,* sin necesidad de iniciar un litigio diferente.

La jurisprudencia de esta Corte Suprema sobre cosa juzgada es abundante. Parece conveniente citar del caso de la *Iglesia Católica* v. *Municipio de Bayamón,* 27 D.P.R. 865, 868, lo que sigue:

"Esta materia de la 'cosa juzgada' ha sido estudiada cuidadosamente por esta Corte Suprema y decidida en muchas ocasiones. En el caso de *González* vs. *Méndez et al.,* 15 D.P.R. 701, se estableció la siguiente doctrina, aplicable a este pleito:

" 'Cuando en una acción se pide la nulidad de una enajenación hecha por la madre de los bienes de su hija menor por carecer de autorización judicial para ello y en otra acción se pide la misma nulidad por el fundamento distinto de que la madre carecía de la patria potestad sobre su hija, siendo el objeto de ambos pleitos el reclamar una herencia y anular la escritura de enajenación, existe la identidad de acción que da vida a la excepción de cosa juzgada.

" 'Existe la identidad de acciones requerida para la existencia de la excepción de cosa juzgada, aunque las razones o causas de nulidad de una enajenación alegadas en ambas acciones sean distintas cuando el objetivo de ambos pleitos es el mismo. Sentencia del Tribunal Supremo de España de 14 de marzo de 1898.'

"No se trata aquí de hechos nuevos ocurridos después de dictada la primera sentencia. Desde el primer instante la demandante estuvo en condiciones de plantear su pleito bajo las mismas bases que lo planteó por su segunda demanda. Ella tuvo la oportunidad que se concede a todos los ciudadanos. Se le dió 'su día en corte.' Si por un error en su gestión más bien que por falta de justicia perdió un derecho, su falta es a ella misma imputable. No es posible ad-

mitir una repetición de pleitos bajo circunstancias tales. Hablando por la corte el Juez Figueras, en el caso arriba citado, dijo:

" 'Esto no puede aceptarse porque nunca se constituiría un estado de derecho estable y serio porque la parte que obtuvo en su pro un fallo definitivo se vería envuelta tantas veces en otros tantos pleitos cuantas razones de pedir distintas, pero conocidas al promover el primer pleito, pudieran ocurrirse a una imaginación fecunda.'

"Véanse también las decisiones de esta Corte Suprema en los siguientes casos: *Quintero* vs. *Morales,* 25 D.P.R. 118; *Vega et al.* vs. *Rodríguez et al.*, 21 D.P.R. 334; *Hernández* vs. *Arán et al.*, 20 D.P.R. 53; *Orama et al.* vs. *Oyanguren,* 19 D.P.R. 829; *Ninlliat* vs. *Suriñach et al.*, 18 D.P.R. 195, y *Calaf et al.* vs. *Calaf,* 17 D.P.R. 198, y la de la Corte Suprema de los Estados Unidos en el caso de *Calaf y Fugurul* vs. *Calaf y Rivera,* 232 U. S. 371, 374.''

Y también el sílabo del caso de *Ninlliat* v. *Suriñach et al,* 27 D.P.R. 74, que dice:

"Cuando algún hecho fundamental o cuestión sustancial para la determinación de ambas acciones ha sido resuelto en un pleito anterior, y el mismo hecho o cuestión está otra vez en controversia entre las mismas partes, el fallo del mismo en el primer pleito será concluyente, si se presentare en debida forma, de la misma cuestión en el último pleito, sin tener en cuenta la cuestión de si la causa de acción es la misma o no lo es, o si el segundo pleito envuelve la misma o distinta materia u objeto en litigio, o si es o no la misma forma de procedimiento.''

Las defensas tercera y cuarta se refieren a que Lawton no tiene derecho al *injunction* solicitado porque se quedó tranquilo desde noviembre 1926 hasta enero 22, 1927, y permitió que los trabajos hechos por Carrión avanzaran considerablemente, y porque Lawton indujo a Carrión a expresar su opinión a Rodríguez, por haber permitido que otros solares se dividieran en porciones de veinte metros de frente cada uno.

Bastará decir que de las propias alegaciones y de las pruebas practicadas consta que Lawton no fué negligente, y que los actos que se atribuyen a Lawton en el sentido indicado estaban enteramente envueltas y pudieron ser ob-

jeto de interpretación y resolución en el pleito entre Lawton y Rodríguez.

La quinta y sexta defensas, se formulan así:

*"Quinta. La restricción ha perdido su valor.*—'Si, como consecuencia del cambio de circunstancias locales, esta restricción había cesado de tener cualquier valor substancial para el demandante, (él) no sería permitido en equidad a hacer cumplirla solamente para molestar y dañar a otro.' (*Brown* vs. *Huber,* 28 L.R.A. (N. S.) 705 a la pág. 722.)"

*"Sexta. Sentencia contra Rodríguez fraudulenta.*—La sentencia contra Rodríguez es fraudulenta porque fué dictada en virtud de la declaración incierta del demandante."

No se necesita de un gran esfuerzo para concluir que si realmente concurrieran a favor de Carrión tales defensas, campo tendría para ejercitarlas en un pleito iniciado por él mismo, pero en manera alguna puede reconocérsele el derecho de dejar él por sí mismo sin efecto una sentencia obligatoria para él, subvirtiendo así el orden que exige la debida administración de la justicia.

Además, ni las alegaciones ni las pruebas demuestran un cambio tal de circunstancias que pudieran servir de base a la aplicación de la doctrina del caso de *Brown* v. *Huber, supra,* ni menos la existencia de fraude por parte de Lawton.

Habiendo llegado a las anteriores conclusiones, esto es, estimando que Carrión violó consciente y deliberadamente la sentencia dictada contra su antecesor Rodríguez que era para él obligatoria, al edificar en la forma en que lo hizo en el solar de que se trata, sin que presentara causa alguna que explicara de modo satisfactorio su conducta en la oportunidad que a tal efecto se le concediera: *debe revocarse la resolución recurrida y el caso devolverse a la corte de distrito* de su origen para que dicte sentencia condenando a Carrión por desacato y decretando la expedición de un mandamiento ordenando a Carrión que proceda a demoler la edificación levantada en el solar No. 4 del "Carrion's Court" dentro

del plazo razonable que se le fije, con los demás pronunciamientos que fueren procedentes e imposición de costas a Carrión.

El Juez Asociado Señor Texidor no intervino.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Presentada en este caso una moción de reconsideración de la sentencia dictada en el mismo el 23 de abril último, se accedió a ello, pero limitando la información de las partes al pronunciamiento relativo al desacato y a si esta corte estaba obligada a dictar la sentencia o resolución que debió haber dictado la Corte de Distrito, ya que en cuanto a la procedencia del *injunction,* la corte no tenía duda alguna.

Se sostiene en la moción y se sostuvo en el acto de la vista de la misma, que esta corte carece de jurisdicción porque no la tiene para conocer de un desacato de naturaleza criminal en el que se dictó sentencia absolutoria; porque la sentencia apelada no se encuentra en los autos; porque impidió al querellado alegar ciertas defensas que legítimamente le asistían, y porque no dictó la sentencia que debió haber dictado la corte de distrito.

La cuestión de jurisdicción que ahora se levanta no fué suscitada por ninguna de las partes anteriormente. Ambas sometieron el caso en su totalidad a la decisión de esta corte. Sin embargo, como se trata de una cuestión privilegiada que puede suscitarse en cualquier momento, debemos considerarla.

Dictada sentencia en el pleito seguido por Lawton contra Rodríguez, Carrión se convirtió en dueño del solar perteneciente a Rodríguez y realizó los actos que conocemos en violación de la sentencia dictada. Lawton presentó entonces su moción a la corte solicitando de ésta que dictara una orden dirigida a Carrión para que compareciera a mostrar causas por las cuales no se le debía condenar por desacato y no debía expedirse un auto perentorio de *injunction* mandatario en ejecución y cumplimiento de la sentencia dictada requiriendo a Carrión a proceder sin demora a la destrucción de la edificación comenzada.

La orden fué dictada. Compareció Carrión y expuso todo cuanto a su derecho convino. Se practicó prueba y la Corte de Distrito finalmente declaró la moción sin lugar no porque entendiera que Carrión no era culpable, sino por creer que los efectos de la sentencia no le alcanzaban.

Se interpuso la apelación para ante este Tribunal y el caso fué ampliamente debatido por escrito y oralmente.

Esta Corte Suprema por medio de su juez asociado Sr. Hutchison, en el caso *In re Montalvo*, 22 D.P.R. 653, 656, se expresó así:

"La única cuestión que ha sido promovida es si la presente apelación debe regirse por las reglas del procedimiento civil o criminal, cuestión que desde luego depende únicamente de la naturaleza de la sentencia apelada. Los principios generales por los cuales debemos regirnos en cuanto al particular quizás jamás han sido más claramente expresados que por el Juez Vanfeet en el caso de *Hammond Lumber Co.* vs. *Sailors' Union of the Pacific*, 167 Fed. 809, y por el Juez Sr. Lamar en el de *Gompers* vs. *Brick's Stove and Range Co.*, 221 U. S. 418. Véase también la nota del caso *Rostchild and Co.* vs. *Iteger and Sons Piano Mg. Co.*, 42 L.R.A., (N. S.) 793 y notas anteriores que en el mismo se citan."

El sílabo del caso, es como sigue:

"El querellado fué convicto de desacato por la Corte de Distrito de Aguadilla por la omisión o falta de cumplimiento con los requerimientos de un mandamiento de injunction expedido en un procedi-

miento seguido ante dicha corte por Joaquín Oronoz Rodón, y en el que figuró el querellado como demandado, apelando éste de dicha sentencia para ante esta Corte; y habiendo solicitado Joaquín Oronoz la desestimación del recurso por el fundamento de no haberse notificado el escrito de apelación: Se resolvió: que siendo la sentencia apelada clara y puramente penal en cuanto a su carácter y propósito, aún admitiendo que los procedimientos que dieron lugar a dicha sentencia eran en equidad por un desacato civil, el apelante estuvo justificado en adoptar el procedimiento que regula las apelaciones criminales y en notificar el escrito al Fiscal como 'abogado de la parte contraria,' en vez de al demandante en el recurso de injunction.''

Aunque pudiera encontrarse alguna jurisprudencia que apoyara la jurisdicción de esta Corte Suprema para resolver la cuestión que le fué sometida a virtud de la apelación por ambas partes interesadas, dadas todas las circunstancias concurrentes creemos que cualquier duda que exista debe resolverse en pro de la persona que fué absuelta.

La cuestión de la condena por desacato no es lo verdaderamente importante. Lo importante en el caso es impedir que la sentencia dictada en el pleito por la corte de distrito registrada el 4 de febrero de 1925 y confirmada por esta Corte Suprema el 21 de mayo de 1926, se desconozca y se realicen actos impunemente en violación de la misma.

Siendo ello así, debe modificarse la sentencia dictada por esta corte el 23 de abril último eliminando de ella todo lo relativo al desacato que será sustituido por el siguiente pronunciamiento: ''En cuanto al desacato la corte se abstiene de intervenir.'' Esto, por supuesto, no quiere decir que la corte de distrito no pueda proceder en el futuro por desacato contra Carrión a virtud de las nuevas situaciones que puedan desarrollarse en el caso.

La parte relativa a la demolición de lo edificado por Carrión debe quedar en pie. La jurisdicción de esta corte es evidente.

Consta transcrita en los autos la resolución apelada firmada por el Juez de Distrito. Dicha resolución no es una

sentencia que debiera registrarse en el libro de sentencias de la corte.

Si se examina la opinión de esta corte emitida para fundar su repetida sentencia de abril 23, se verá que todas las defensas presentadas por Carrión fueron consideradas en sus méritos, aún aquellas que se creyó que eran propias para ser alegadas por Carrión en un pleito iniciado por él y no para sostener su decisión de tomarse la justicia por su propia mano.

Es cierto que la ley—art. 306 del Código de Enjuiciamiento Civil tal como quedó enmendado en 1906, Comp. 1911, pág. 904—impone a este tribunal cuando revoca una sentencia el deber de dictar la que debió haber dictado la corte inferior, con las excepciones que establece, práctica que hemos seguido en cuantos casos nos ha sido posible.

Dada la naturaleza de éste, creímos que era mejor la fórmula adoptada. Eliminada la cuestión de desacato, se cumplirá a la letra el precepto y se procederá a dictar la resolución que debió haber dictado la corte de distrito, fijándose el término de noventa días contado a partir del en que la sentencia de esta corte se reciba en la de distrito, para la demolición de lo edificado en contravención de la sentencia con imposición de las costas a Carrión.