JESÚS STELLA RODRÍGUEZ, hoy su Sucesión compuesta por su viuda CONSUELO MARCUCCI DE STELLA y sus hijos nombrados GUILLERMINA, HILDA, AGLAÉ, JOSEFINA y EDDIE STELLA MARCUCCI, demandantes, apelantes y apelados *v.* MUNICIPIO DE GUAYANILLA, GREAT AMERICAN INDEMNITY CO., PEDRO RODRÍGUEZ DÍAZ y PEDRO RODRÍGUEZ, JR., demandados, apelados y apelantes.

Número 10914.
*Sometido:* 2 de marzo de 1954. *Resuelto:* 30 de junio de 1954.

*Leopoldo Tormes,* abogado de los demandantes, apelantes y apelados; *R. Rivera Zayas, G. Rivera Cestero* y *Milton F. Rúa,*

abogados de la demandada, apelada y apelante Great American Indemnity Co.; *Charles Cuprill,* abogado de los demandados, apelados y apelantes de apellido Rodríguez.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal:

El presente litigio surgió como consecuencia de los hechos que pasamos a narrar en seguida: allá para el año 1933 Jesús Stella Rodríguez, quien se dedicaba a la siembra y cultivo de caña de azúcar, solicitó de la Comisión de Servicio Público autorización para construir un desvío entre los kilómetros 256 y 257 de la línea general de la American Railroad Co. of Puerto Rico. El Municipio de Guayanilla(1) se opuso a ello, no obstante lo cual en 19 de diciembre de dicho año la Comisión dictó resolución concediendo la autorización solicitada. Apeló el municipio en 15 de enero de 1934 y para suspender los efectos de la resolución dictada, el mismo día solicitó de la antigua Corte de Distrito de San Juan que así lo decretara. Véanse los arts. 78, 79 y 80 de la Ley núm. 70 de 6 de diciembre de 1917 (Vol. II, págs. 433, 527). Dicha corte accedió a lo solicitado, por orden fechada el 15 del mismo mes y año, en la cual hizo constar que la compañía ferroviaria y Stella Rodríguez debían comparecer ante ella el día 25 siguiente a las dos de la tarde a mostrar causa por la cual no debía concederse la orden de *supersedeas* interesada. Ordenó además que mientras se resolvía la indicada petición la American Railroad Co. se abstendría de ejecutar la resolución de la Comisión, todo ello mediante prestación de una "fianza de $2,000 para responder de los daños que pudiesen causarse a la perjudicada." Esa fianza fué prestada el 15 de enero de 1934 por el municipio, como principal, y la Great American Indemnity Co., como fiadora.

El 9 de marzo de 1934 dicha corte dictó una orden interlocutoria en la que después de referirse a la vista celebrada en 25 de enero del mismo año, decretó y ordenó que mientras se

---

(1) En adelante nos referiremos a éste meramente como el municipio.

resolvía y decidía la apelación el municipio debía "prestar una fianza a favor del Pueblo de Puerto Rico por la suma de $2,000 para beneficio de la parte que resulte agraviada por esta orden y responderle de los daños y perjuicios que pudieran ocasionarse, concediéndosele para ello el término de cinco días después de notificada." La segunda fianza así fijada fué prestada el 14 de marzo de 1934 por el municipio, como principal, y por Pedro Rodríguez, Jr., y Pedro Rodríguez Díaz, como fiadores.

En 29 de mayo de 1935 se dictó por dicha corte otra resolución, en la cual después de referirse a la orden interlocutoria de 9 de marzo del año anterior, a que hacemos referencia en el párrafo precedente, hizo constar que Stella Rodríguez había solicitado por moción de 9 de abril se ampliara la fianza hasta una cantidad no menor de $5,000 y que celebrada la vista con la sola comparecencia del peticionario, a pesar de que las demás partes habían sido notificadas de la misma, había quedado completamente satisfecha de la insuficiencia de la fianza originalmente prestada de conformidad con su referida orden interlocutoria. Ordenó entonces la ampliación de la fianza hasta la suma de $5,000 y dispuso que habiéndose prestado ya de conformidad con dicha orden una fianza de $2,000, debía prestarse "una fianza adicional por la cantidad de $3,000 con efecto retroactivo al 9 de marzo de 1934, bajo las mismas condiciones en que se extendió la ya prestada de $2,000", concediendo para ello un término de cinco días. Esta nueva fianza, que calificaremos de la tercera en el pleito, fué prestada el 14 de junio de 1935 por el municipio, como principal, y por la Great American Indemnity Co., como fiadora, especificándose en una de sus cláusulas que la misma se presta con efecto retroactivo al 9 de marzo de 1934.

Por sentencia fechada el 16 de febrero de 1937 la antigua Corte de Distrito de San Juan desestimó la apelación interpuesta por el municipio. Éste apeló entonces para ante el Tribunal Supremo de Puerto Rico y por sentencia de 31 de

mayo de 1938 confirmamos la apelada.   Véase *Municipio* v. *Comisión de Servicio Público*, 53 D.P.R. 276.   Es conveniente mencionar aquí que mientras se sustanciaba la apelación interpuesta para ante nos contra la sentencia dictada por la corte de distrito y mientras el recurso estuvo pendiente de resolución ante este Tribunal no se prestó fianza adicional de clase alguna.

De la sentencia dictada por nosotros el municipio apeló en 25 de junio de 1938 para ante la Corte de Apelaciones de los Estados Unidos para el Primer Circuito y a fin de evitar que se ejecutara la sentencia apelada solicitó de este Tribunal le fijara fianza de *supersedeas* y para costas.   El 12 de julio siguiente fijamos la primera en la suma de $10,000 y la segunda en $300.   Estas fianzas fueron prestadas 16 días más tarde por el municipio, como principal, y la Great American Indemnity Co., como fiadora, y las mismas fueron aprobadas por nosotros al siguiente día.   A virtud de opinión *per curiam* de 13 de diciembre de 1940 la Corte de Apelaciones para el Primer Circuito confirmó nuestra sentencia.   *Municipality of Guayanilla* v. *Public Service Com'n*, 116 F.2d 15.   Y en 2 de junio de 1941 el Tribunal Supremo de los Estados Unidos declaró sin lugar una petición de *certiorari* presentádale en el caso.   *Municipality of Guayanilla* v. *Public Service Com'n of Puerto Rico*, 313 U. S. 587.

Así las cosas, Jesús Stella Rodríguez acudió en 8 de agosto de 1941 ante la antigua Corte de Distrito del distrito judicial de Ponce con la demanda de daños y perjuicios que dió origen al presente pleito.   En ella se alega que por no habérsele permitido construir el desvío en la fecha en que se concedió la autorización por la Comisión  de Servicio Público, el demandante se vió precisado a incurrir en mayores gastos en la transportación de sus cañas y se reclama por concepto de daños y perjuicios una suma en exceso de $22,000, más costas y honorarios de abogado.

Los demandados Rodríguez Díaz y Rodríguez, Jr., contestaron negando los hechos esenciales de la demanda, levantando como defensas especiales la prescripción de la acción y, a virtud de la fianza posterior prestada por la Great American Indemnity Co., la extinción de su obligación por confusión. El municipio negó los hechos alegados en la demanda. Como defensas especiales sostuvo que el alcalde de Guayanilla no estaba autorizado por la asamblea para oponerse a nombre del municipio a la solicitud de Stella Rodríguez; que de obtenerse sentencia contra el municipio la misma resultaría ilusoria por no haber asignación en presupuesto; y la prescripción de la acción. La Great American Indemnity Co. negó los hechos alegados, levantó ciertas defensas especiales y formuló además una reclamación recíproca contra el municipio, al efecto de que éste se había obligado a reembolsarle cualquier pérdida, daño y gasto en que ella pudiera incurrir o ser responsable con motivo de las fianzas prestadas. Suplicó en su reclamación recíproca que en cualquier sentencia que se dicte se determinen las respectivas responsabilidades y derechos existentes bajo dichas fianzas entre el municipio como principal y la Great American Indemnity Co. como fiadora, así como que si se le condena a pagar al demandante determinada cantidad, se condene igualmente al municipio a pagarle a ella dicha suma, más $2,000 por concepto de honorarios de abogado incurridos en la defensa del pleito, al igual que el importe total de los gastos en que incurra en la investigación y defensa de esta acción.(²)

Durante el juicio celebrado las partes ofrecieron extensa prueba testifical y documental y en 29 de diciembre de 1952 el Tribunal Superior de Puerto Rico, Sala de Ponce, como sucesor del Tribunal de Distrito de Puerto Rico y éste de la anti-

(²) Conforme hizo constar el tribunal a quo en su opinión, ni el Municipio de Guayanilla ni ninguna de las otras partes envueltas en este pleito han establecido alegación alguna contra la reclamación de la Great American Indemnity Co. of New York, y en el acto del juicio oral la codemandada Great American Indemnity Company of New York ofreció su prueba tendiente a sostener esas alegaciones.

gua Corte de Distrito del distrito judicial de Ponce, dictó sentencia declarando con lugar la demanda y condenando a los demandados Municipio de Guayanilla, Great American Indemnity Co. of New York, Pedro Rodríguez Díaz y Pedro Rodríguez, Jr., a pagar solidariamente a los demandantes(3) la cantidad de $8,153.55 "o sea, el exceso total de gastos incurridos por el demandante Jesús Stella Rodríguez por transportación y envagonamiento durante las zafras de 1934–1941 ambas inclusives, al compararse con los gastos por igual concepto incurridos durante la zafra de 1942 en que pudieron usar el desvío cuya construcción y conexión se le había autorizado." También se condenó a los demandados a pagar solidariamente a los demandantes la suma de $882.65 "por diferencia en el costo de construcción y conexión del desvío entre la fecha 1933 en que se concedió autorización para su construcción y conexión y el año 1941 en que pudo ser construído e instalado a la vía general del ferrocarril de la American Railroad Co. of Puerto Rico." Se condenó asimismo a los demandados a pagar las costas del litigio más $750 por concepto de honorarios de abogado. "Finalmente se condena al Municipio de Guayanilla a pagar a . . . Great American Indemnity Co. of New York la suma de $560.49 incurrida por dicha compañía en la investigación y defensa de este pleito, por cuenta de dicha demandada, y . . . la suma de $2,000 por concepto de los honorarios de abogados de dicha compañía por la defensa que ha tenido que hacer en este caso." La sentencia así dictada está basada en una extensa opinión, en que figuran las siguientes conclusiones de hechos probados:

"...........................................................

"19. Que el demandante Jesús Stella Rodríguez durante las zafras azucareras de los años 1934–1941, ambas inclusive, tuvo que transportar las cañas que produjeron sus fincas del Municipio de Guayanilla hasta la estación del ferrocarril de Guayanilla y desde allí conducirlas hasta las centrales Boca Chica, radicada en el Municipio de Juana Díaz, Puerto Rico y Mercedita,

---

(3) Jesús Stella Rodríguez falleció el 4 de diciembre de 1944 y los componentes de su sucesión fueron sustituídos como demandantes en su lugar.

radicada en el municipio de Ponce, Puerto Rico, donde tenía sus contratos para moler las mismas.

"20. Que en la estación del ferrocarril de Guayanilla, a donde tenía que llevar el demandante Jesús Stella Rodríguez sus cañas durante todas las zafras de 1934 a 1941, ambas inclusive, no existían facilidades para cargar ni envagonar las cañas.

"21. Que a virtud de la distancia entre las distintas fincas del demandante Jesús Stella Rodríguez y la estación del ferrocarril de Guayanilla, así como de las deficiencias existentes en dicha estación del ferrocarril de Guayanilla para realizar labores de carga, descarga y envagonamiento de las cañas del demandante Jesús Stella Rodríguez, éste incurrió en gastos en exceso de los que hubiera podido incurrir si hubiera podido transportar sus cañas desde sus fincas al desvío que le autorizó a construir y conectar la Comisión de Servicio Público de Puerto Rico en 19 de diciembre de 1933 en los kilómetros 256 y 257 de la línea general del ferrocarril, de la American Railroad Company of Puerto Rico.

"22. Que los costos promedio de envagonamiento de las cañas producidas por el demandante Jesús Stella Rodríguez durante las zafras comprendidas entre los años 1934–1941 ambos inclusive, en la estación del ferrocarril de Guayanilla, fueron, por años, como sigue:

Año:
| | | |
|---|---|---|
| 1934 | 12.294 | centavos por tonelada |
| 1935 | 12.185 | centavos por tonelada |
| 1936 | 12.072 | centavos por tonelada |
| 1937 | 12.052 | centavos por tonelada |
| 1938 | 12.746 | centavos por tonelada |
| 1939 | 11.646 | centavos por tonelada |
| 1940 | 13.550 | centavos por tonelada |
| 1941 | 14.750 | centavos por tonelada |

"23. Que el promedio general de los costos de envagonamiento de las cañas del demandante Jesús Stella Rodríguez durante todo el período comprendido entre 1934–1941, ambos inclusive, en la estación del ferrocarril en Guayanilla fué de 12.66 centavos por tonelada.

"24. Que el promedio de costos de envagonamiento de las cañas producidas en las distintas fincas del demandante Jesús Stella Rodríguez y su Sucesión para la zafra de 1942 en el desvío construído en los kilómetros 256–257 de la vía general de la American

Railroad Company of Puerto Rico fué de 4.3296 centavos por tonelada.

"25. Que tomando el promedio general de costos de envagonamiento de las cañas del demandante Jesús Stella Rodríguez durante las zafras de 1934–1941 ambas inclusive y restando el promedio de costos de envagonamiento de esas mismas cañas durante la zafra de 1942 tenemos una diferencia de 8.3304 centavos por tonelada en exceso.

"26. Que el promedio general de costos de transportación de las cañas producidas por las distintas fincas del demandante Jesús Stella Rodríguez, a la estación del ferrocarril de Guayanilla, durante las zafras de 1934–1941, ambas inclusive, comparado con el promedio de costos de transportación de la zafra de 1942 al desvío del ferrocarril ya construído es en exceso de .640 centavo por tonelada.

"27. Que concediendo un promedio anual de gastos de mantenimiento del desvío en la línea del ferrocarril de la American Railroad Company of Puerto Rico construído por los demandantes de .0065 centavo por tonelada, la diferencia en contra de los intereses del demandante Jesús Stella Rodríguez y su Sucesión en gastos de transportación entre ambos puntos, estación del ferrocarril de Guayanilla y desvío, es de .0575 centavos por tonelada.

"28. Que el promedio general de cañas producidas por las distintas fincas del demandante Jesús Stella Rodríguez durante las zafras de 1934–1941, ambas inclusive, fué de 57,907.155 toneladas.

"29. Que el demandante Jesús Stella Rodríguez incurrió en gastos, por concepto de envagonamiento de sus cañas de las zafras de 1934–1941, ambas inclusive, en exceso de los gastos incurridos por igual concepto en la zafra de 1942, ascendentes a cuatro mil ochocientos veintitrés (4,823) dólares con ochenta y nueve (89) centavos. ($4,823.89)

"30. Que el demandante Jesús Stella Rodríguez incurrió en gastos, por concepto de transportación, de sus cañas de las zafras de 1934–1941, ambas inclusive, en exceso de los gastos incurridos por igual concepto durante la zafra de 1942 ascendentes a la suma de tres mil trescientos veinte y nueve (3,329) dólares con sesenta y seis (66) centavos. ($3,329.66)

"31. Que el demandante Jesús Stella Rodríguez incurrió en gastos totales por concepto de envagonamiento y transportación de sus cañas en la estación del ferrocarril de Guayanilla durante

las zafras de 1934–1941 en exceso de los gastos incurridos por igual concepto (transportación y envagonamiento) en el desvío construído para la zafra de 1942 ascendentes a un total de ocho mil ciento cincuenta y tres dólares con cincuenta y cinco centavos ($8,153.55).

"32. Que el costo de la construcción y conexión del desvío autorizado por la Comisión de Servicio Público de Puerto Rico en su resolución del 19 de diciembre de 1933, de conformidad con el costo de los materiales de construcción en aquella época, y según los cálculos más conservadores de personas expertas en la construcción de obras de esta naturaleza hubiera sido de mil novecientos cincuenta y nueve dólares con cincuenta y siete centavos ($1,959.57).

"33. Que el costo de dicho desvío y su conexión a la vía general de la American Railroad Company según los cálculos de personas igualmente expertas en construcciones de esa clase de obras, y debido al aumento en los costos de los materiales así como en la mano de obra en el año 1941, fecha para la cual se vino a poder construir y conectar el desvío objeto de este pleito fué de dos mil ochocientos cuarenta y dos dólares con veintidós centavos ($2,842.22).

"34. Que la diferencia en el costo de ese desvío por razón de aumento en el costo de materiales y mano de obra entre las fechas 1933 y 1941 fué en exceso de ochocientos ochenta y dos dólares con sesenta y cinco centavos ($882.65).

"35. Que la bonificación o compensación que la Central Boca Chica otorgaba al demandante Jesús Stella Rodríguez por gasto de transportación de sus cañas formaba parte de la consideración de conformidad con los términos del contrato de molienda de concertación anual entre la central y el colono Jesús Stella Rodríguez.

"Consideramos que de conformidad con la prueba en este caso, el cuidado especial que alega el demandante Jesús Stella Rodríguez haber tenido que ejercitar en la transportación de sus cañas dentro de la zona urbana del Municipio de Guayanilla, que le obligaban a pasar por frente de edificios destinados a escuelas públicas para poder llegar a la estación del ferrocarril de Guayanilla donde estaba obligado a conducir, descargar y envagonar sus cañas para transportarlas a la central donde las molía, forman parte de la diferencia de gastos que por esos conceptos se ha señalado en los hechos 29 y 30 arriba indicados.

También entendemos que en este caso, independientemente de que la prueba no los establece concluyentemente, los sufrimientos morales y preocupaciones mentales del causante de los demandantes no son compensables en este caso.

"36. Que la Great American Indemnity Company of New York, desde la fecha de la radicación de la demanda en este caso, hasta la fecha del juicio oral celebrado incurrió en gastos relacionados con la investigación y organización de la defensa ascendentes a la suma de quinientos sesenta dólares con cuarenta y nueve centavos ($560.49) y que dicha compañía celebró un contrato de servicios profesionales a virtud del cual convino en pagarle la suma de dos mil dólares ($2,000) por sus servicios en este pleito para hacer valer los derechos de dicha Great American Indemnity Company of New York."

De esa sentencia apelaron para ante nos Rodríguez Díaz, Rodríguez Jr., la Great American Indemnity Co. y el Municipio de Guayanilla. También apelaron los demandantes en tanto en cuanto se les concedió únicamente la suma de $750 por concepto de honorarios de abogado. Toda vez que el municipio demandado no ha radicado alegato alguno en apelación, su recurso debe ser desestimado.

Los apelantes Rodríguez Díaz y Rodríguez, Jr., señalan siete errores en su alegato. La Great American Indemnity Company señala en el suyo, que ha sido radicado por separado, ocho errores. Algunos de éstos no obstante son una repetición de los señalados por los otros apelantes. Pasaremos a discutir inmediatamente todos los errores señalados.

Contrario a lo alegado por la apelante, el tribunal sentenciador no erró al declarar sin lugar la defensa de prescripción por ella suscitada. La acción instada es una de daños y perjuicios *ex delicto*—*Avalo* v. *Cacho*, 73 D.P.R. 286, 292—que no podía iniciarse hasta tanto la sentencia fuera firme. *Capó* v. *A. Hartman & Cía.*, 57 D.P.R. 196, 201; *Martí* v. *Hernández*, 57 D.P.R. 819; *Sosa* v. *Sucn. Morales*, 58 D.P.R. 360, 364; *Cintrón* v. *Insular Etc., y Balbaño*, 58 D.P.R. 821. Siendo la acción *ex delicto* la misma prescribía por el transcurso de un año y el término prescriptivo "se contará desde

el día en que pudieron ejercitarse." (⁴)  Como en este caso
la sentencia quedó firme e inapelable el 2 de junio de 1941,
fecha en que el Tribunal Supremo de Estados Unidos declaró
sin lugar la petición de *certiorari* allí interpuesta, y fué en-
tonces que el demandante estuvo en condiciones de ejercitar
su acción, desde ese día empezó a correr el término prescrip-
tivo de un año.  Como el presente caso se inició el 8 de agosto
de 1941 el mismo se instó dentro del año prescrito por el art.
1868 del Código Civil, edición de 1930.

■■ Si bien, conforme antes se ha indicado, al apelarse
para ante el Tribunal Supremo de Puerto Rico de la senten-
cia dictada por la Corte de Distrito no se prestó nueva fianza
o fianza adicional alguna, las fianzas segunda y tercera (de
$2,000 y $3,000 respectivamente) tuvieron vigencia desde el
9 de marzo de 1934 hasta que el pleito quedó definitivamente
resuelto por este Tribunal el 31 de mayo de 1938.  Esas fian-
zas fueron prestadas para responder a The American Rail-
road Co. y demás partes que pudieran ser perjudicadas de cua-
lesquiera daños y perjuicios "que pudieran ocasionarse en el
caso de resolverse en definitiva no haber lugar a fallo en
dicho pleito en contra de los apelados."  Esto en otras pala-
bras significa que dichas fianzas fueron prestadas para res-
ponder de los daños y perjuicios que pudieran irrogarse o se
irrogaran a Stella Rodríguez con motivo de la suspensión de
la resolución de la Comisión de Servicio Público mientras el
pleito estuvo pendiente.  En armonía con el art. 348 del Có-
digo de Enjuiciamiento Civil "un pleito se considera pendiente
desde que principia hasta su resolución final en apelación, o
hasta que haya expirado el tiempo para interponer el recurso

---

(⁴) De acuerdo con el art. 1868 del Código Civil, ed. 1930:
"Prescriben por el transcurso de un año:
"..

"2. La acción para exigir la responsabilidad civil . . . por las obligacio-
nes derivadas de la culpa o negligencia de que se trata en el artículo 1802
desde que lo supo el agraviado."

Y según el art. 1869 del mismo cuerpo legal:
"El tiempo para la prescripción de toda clase de ·acciones, cuando no
haya disposición especial qué· otra cosa determine, se contará desde el· día
en que pudieron ejercitarse."

de apelación . . .". Interpretando ese artículo dijimos en *Morales* v. *Cruz Vélez*, 36 D.P.R. 242, 243, que "estamos obligados a resolver que una acción está pendiente hasta que se dicta una sentencia que es inapelable." Véanse también *Lawton* v. *Rodríguez Rivera*, 38 D.P.R. 38, 47 y 1 Cal. Jur. 2d, pág. 41, sec. 14. Así pues dichas dos fianzas (la segunda y tercera, de $2,000 y $3,000, respectivamente) prestadas en el caso tuvieron toda eficacia mientras el pleito estuvo pendiente tanto ante la Corte de Distrito de San Juan como ante este Tribunal Supremo. En su consecuencia, estuvo en lo cierto el tribunal a quo al decidir que dichas fianzas respondían de los daños ocasionados al demandante con posterioridad al 16 de febrero de 1937, día en que el Tribunal de Distrito dictó su sentencia.

■ Tampoco cometió error el tribunal sentenciador al resolver que los daños sufridos por el demandante ascendían a $8,153.55. No es menester que entremos en detalles respecto a cómo dicho tribunal llegó a la conclusión de que dichos daños montaban a la indicada suma. Esos detalles aparecen en las conclusiones de hechos probados que antes hemos copiado.

■ Por otro lado, aunque no hay la menor duda de que una persona que sufre daños viene obligada a tomar cuantas medidas fueren pertinentes para reducir el monto de los mismos—*Ortiz* v. *McCormick Steamship Co.*, 57 D.P.R. 560, 566; 15 Am. Jur. 420, sec. 27; 81 A.L.R. 282; 106 A.L.R. 1299—sin embargo, nada hay en los autos que revele que el causante de la sucesión no fuera diligente a ese respecto. Si las Centrales Mercedita y Boca Chica le ofrecían mejores condiciones que la Rufina, y si por otra parte Stella Rodríguez y los dueños de esta última central estaban enemistados, no había razón alguna para concluir que por el hecho de que ésta quedara más cerca de las fincas de Stella Rodríguez que aquéllas él viniera necesariamente obligado a moler sus cañas en la Central Rufina y que al así actuar no desplegara las diligencias necesarias para mitigar los daños.

■ Estuvo ajustado a derecho el tribunal a quo al resolver que el municipio era responsable de daños y perjuicios por haber solicitado y obtenido la suspensión de los efectos de la resolución dictada por la Comisión de Servicio Público. La resolución era ejecutoria no obstante la apelación interpuesta por el municipio contra la misma—art. 80 supra—y fué precisamente para responder de los daños y perjuicios que se irrogaran a Stella Rodríguez con la suspensión de dicha resolución que se prestaron las fianzas a que antes hemos hecho referencia.

■ Las actuaciones del alcalde en este caso fueron debidamente autorizadas por la Asamblea Municipal de Guayanilla. En los autos hay resoluciones a ese efecto. Él era el llamado a comparecer en el procedimiento. Art. 29 de la Ley 53 de 1928 (págs. 335, 357).

■ El hecho de que la demanda esté jurada no significa en manera alguna que por no haberse probado la totalidad de los daños reclamados, aquélla debió declararse sin lugar. En una acción como la aquí envuelta, bastaba que el demandante probara daños por cualquier cantidad para que se dictara sentencia a su favor.

Nada hay en las conclusiones de hechos antes reseñadas que demuestren que el tribunal a quo incluyera en sus cálculos las cañas producidas por la finca Santoni. En lo que respecta a haber concedido daños por la zafra de 1934, tampoco erró dicho tribunal. De acuerdo con la prueba que tuvo ante sí, muy bien pudo concluir que habiéndose autorizado la construcción del desvío el 19 de diciembre de 1933 y siendo el desvío completamente corto el mismo hubiera podido terminarse para ser utilizado durante la referida zafra, a no ser por la intervención del municipio.

■ La fianza prestada por Rodríguez Díaz y Rodríguez, Jr., por la suma de $2,000 (segunda fianza), no quedó sin efecto al prestarse la posterior de supersedeas por la suma de $10,000. Esta última fué dada *exclusivamente* para responder de los daños y perjuicios que se irrogaran con motivo

de la suspensión de la sentencia dictada por este Tribunal, apelada para ante la Corte de Circuito.

No tienen razón los apelantes al sostener que a ellos les asiste el derecho de excusión. En las fianzas judiciales tal derecho no existe. Art. 1755 del Código Civil, ed. 1930; *Goico* v. *Flores Colón,* 35 D.P.R. 136.

También sostienen los demandados que en este caso las fianzas carecen de toda eficacia, debido a que la persona que suscribió las mismas a nombre del municipio lo fué el Lic. Pedro M. Porrata, que era abogado de aquél, y no el Alcalde. De los autos surge que todas las fianzas—a excepción de la de supersedeas para suspender la ejecución de la sentencia dictada por este Tribunal—en lo que al principal respecta, están suscritas así: "Municipio de Guayanilla, Pedro M. Porrata, Abogado de la principal." Ello no las invalida. De los autos aparece que la Asamblea Municipal autorizó por resolución debidamente aprobada que se prestara "la fianza que sea necesaria"; que las primas de las mismas se pagaron y que el objetivo perseguido por el municipio fué logrado. Por el contrario, nada hay que revele que el Lic. Porrata no firmara por delegación. Eso basta para sostener la eficacia de las fianzas. 17 McQuillin, *Municipal Corporations,* 3ra. ed., pág. 232, sec. 49.33. Por otra parte, nada hay en nuestras leyes que exija que el principal necesariamente tenga que firmar la fianza en unión a los fiadores. Lo que sí es indispensable para su validez es que toda fianza esté suscrita por estos últimos. Art. 355 del Código de Enjuiciamiento Civil.(⁵) *Cf.* 8 Am. Jur., pág. 710, sec. 10. Y

(⁵) El art. 355 del Código de Enjuiciamiento Civil dispone:

"(1) En todos los casos en que, de conformidad con lo dispuesto por este Código, deba constituirse una fianza personal, el funcionario ante quien se preste exigirá que dicha fianza vaya acompañada de una declaración escrita y jurada por los fiadores . . . (2) Toda corporación con un capital cobrado o ingresado . . . podrá constituirse en garante y ser aceptada como tal, o como única y suficiente fiadora de dichas obligaciones . . . siempre que dicha corporación hubiere cumplido con todos los requisitos de las leyes de la Isla que rigen para la formación de dichas corporaciones, y su admisión a esta clase de negocios."

que se preste a instancias de un fiador o éste se beneficie de sus efectos.

██ Si bien el tribunal sentenciador no cometió ninguno de los errores antes discutidos, sin embargo, si erró al no determinar la parte específica que del total de $8,153.55 concedido por concepto de daños y perjuicios, cada una de las fianzas prestadas debía responder. Toda fianza será interpretada restrictivamente "y no puede extenderse a más de lo contenido en ella." Art. 1726 del Código Civil, ed. 1930. En otras palabras esto significa que a los fiadores no puede hacérseles responsables más allá de aquello a que se obligaron. *Avalo* v. *Cacho*, 71 D.P.R. 105, 110. Debe, por tanto, especificarse en la sentencia la suma de que cada una de las fianzas responde. Para ello habrá de tenerse presente que la primera fianza por $2,000 sólo responde de los daños y perjuicios que se pudieron irrogar del 19 de diciembre de 1933 al 9 de marzo de 1934; que las fianzas segunda y tercera, por $2,000 y $3,000, respectivamente, cubren los daños causados del 10 de marzo de 1934 al 31 de mayo de 1938, fecha esta última en que este Tribunal dictó sentencia en el caso; y que la cuarta fianza, o sea la de supersedeas por $10,000, se prestó para garantizar los daños que se ocasionaran con la suspensión de nuestra sentencia y hasta que el pleito se resolviera en definitiva. En igual forma debemos expresarnos en relación con la suma de $882.65 concedida "como diferencia en costo de construcción del desvío entre los costos del año 1933 y el año 1941 en que fué construído." El error así cometido requiere que, en lo que a los fiadores concierne, la sentencia sea revocada.

██ También cometió el tribunal sentenciador el siguiente error: La Great American Indemnity Co. presentó una reclamación recíproca contra el municipio, alegando que con motivo de las fianzas prestadas éste se obligó a indemnizarle por cualquier pérdida, daño o gasto en que ella pudiera incurrir. El municipio no contestó tal reclamación y su rebeldía fué anotada. La compañía fiadora adujo prueba para

sostener su reclamación. No obstante, en su sentencia el tribunal a quo meramente condena al municipio a pagar a la Great American la suma de $560.49, "incurrida por dicha compañía en la investigación y defensa de este pleito . . . y la suma de $2,000 por concepto de los honorarios de abogado de dicha compañía." Nada dijo respecto al pago por el municipio a la Great American Indemnity Co. de cualquier cantidad que esta última tenga que pagar a la Sucesión Stella Rodríguez por concepto de daños y perjuicios, ni respecto a los honorarios de abogados adicionales en que pudiera incurrir la fiadora con motivo de la apelación interpuesta para ante este Tribunal. También guardó silencio el tribunal en su sentencia respecto al deber del municipio de incluir en el presupuesto del siguiente año las cantidades que por razón de la sentencia el municipio venga obligado a pagar a dicha compañía fiadora. (⁶)

El octavo error señalado por la Great American Indemnity Co. y el único imputado por la sucesión demandante se refieren a los honorarios de abogado concedidos. La primera sostiene que el tribunal erró al condenarle al pago de los mismos, y la demandante que la cuantía concedida por tal concepto es insuficiente. Aunque el caso se devolverá al tribunal de origen, creemos procedente resolver los errores así planteados; primero, porque en cuanto al municipio respecta la sentencia que dictamos será definitiva; y segundo porque en cuanto a los demás demandados el caso retornará al tri-

---

(⁶) Nos damos perfecta cuenta de que habiendo varias fianzas y diversos fiadores y de que, siendo indispensable determinar el monto de que responde cada fianza, al tribunal a quo no le será posible precisar de momento la cantidad o cantidades específicas que el municipio deberá pagar a la Great American Indemnity Co. por concepto de los daños y perjuicios sufridos por la sucesión y por razón de los gastos incurridos por la Great American Indemnity Co. con motivo de la apelación interpuesta para ante nos. Sin embargo, la sentencia que a este respecto se dicte por el tribunal de instancia podrá quedar redactada en forma tal que cuando dentro de este mismo `pleito y con audiencia del municipio se demuestren las cantidades efectivamente pagadas por ella por los conceptos antes mencionados, la misma pueda ser ampliada para hacer constar de manera clara la suma exacta de que responderá el municipio a la fiadora.

bunal sentenciador únicamente para ulteriores procedimientos que en nada afectan este aspecto del mismo.

Hemos leído los autos co nel detenimiento y con el cuidado que el caso requiere. Esa lectura nos convence de que, lejos de creer que el tribunal a quo erró al conceder a la demandante honorarios de abogado, consideradas las múltiples gestiones suscitadas y discutidas en el caso y el número de días que duró el juicio del mismo, tales honorarios deben fijarse en la suma de $2,000.

La apelación interpuesta por el Municipio de Guayanilla será desestimada. En lo que respecta a las apelaciones interpuestas por los fiadores Rodríguez Díaz, Rodríguez, Jr., y la Great American Indemnity Co., la sentencia apelada será revocada y el caso devuelto al Tribunal Superior, Sala de Ponce, para ulteriores procedimientos consistentes con esta opinión. Y en cuanto a todas las partes, la sentencia será modificada en el sentido de fijar los honorarios de abogado de la parte demandante en la suma de $2,000.

Los Jueces Presidente Sr. Snyder y Asociados Sres. Ortiz y Belaval no intervinieron.